## UNITED STATES of America, Appellee,

### v.

### Robert T. EDICK, Appellant.

### No. 13590.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1970.

Decided Oct. 14, 1970.

A. Andrew Giangreco, Alexandria, Va. (Court-appointed), for appellant.

David H. Hopkins, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

This appeal is taken from a conviction on a conspiracy count [1] and on numerous substantive counts charging misapplication of bank funds [2] and making false bank entries.[3] Edick's principal contention is that he was not within the reach of 18 U.S.C.A. §§ 656 and 1005, because he was employed by a service corporation, related to the bank, and not by the bank itself. We conclude that Edick is within the class reached by the literal language of those sections and that his inclusion in the class is clearly required by the congressional purpose.

I

Edick was manager of the Proof Department of First Service Corporation, a wholly owned subsidiary of First Virginia Bank Shares Corporation. First Virginia Bank Shares is a holding company, which owns a controlling interest in several banks, including Old Dominion Bank, whose deposits are insured by the Federal Deposit Insurance Corporation. First Service had been set up by First Virginia Bank Shares to handle the proofing and bookkeeping for its member banks. Provided with computers and staffed with the necessary personnel, it functioned as the automated, consolidated proofing and bookkeeping department for Old Dominion and the other member banks of the First Virginia Bank Shares group. It was because First Service served such functions that Edick was in a position to divert bank service charges, which should have been credited to Old Dominion's service charge income

1.  18 U.S.C.A. § 2.

2.  18 U.S.C.A. § 656.

3.  18 U.S.C.A. § 1005.

account, to the personal checking account of Terry Harris, an Old Dominion depositor and Edick's alleged coconspirator.

■ Misapplication of the funds of an insured bank by one who is "an officer, director, agent or employee of, or connected in any capacity with" such bank is proscribed by § 656. Because his immediate employer was First Service, a separate corporate entity, not Old Dominion, Edick contends he is not within the defined class, but it seems clear to us that he was "connected in any capacity with" Old Dominion, if he was not its agent. He performed essential work for Old Dominion. Substantively, his relation to Old Dominion's operations and its records was precisely the same as it would have been if Old Dominion had continued to do its own proofing and bookkeeping and Edick had been the manager of its proofing department. He, with other First Service employees, did all of Old Dominion's proofing and, at the direction or request of Old Dominion officials, performed all of the related services traditionally performed by a bank's proofing department. It was because of his intimate relation to the bank's business and its records, in a position of trust, that he was able to divert its funds and make false entries in its records. Surely, he was "connected" with Old Dominion within the meaning of § 656.

■ The false entry counts of the indictment were founded upon § 1005, which prohibits the making of false entries in the books of any Federal Reserve Bank, member bank, national bank or insured bank. The prohibition is not limited to any class of person, though there is a practical limitation to those who have access to such records, unless, as Edick contends, the class limitations in § 1005's proscription against the unauthorized issuance or circulation of notes is imported into the false entry provision. We think the two provisions are independent and that the false entry prohibition is not limited to a defined class.

Section 1005, the text of which is quoted in the margin,[4] makes it a federal crime for one, "being an officer, director, agent or employee" of a federally related bank, without authority from the bank's directors, to issue or put in circulation notes of the bank. The next clause, without definition of any class, makes it a federal crime for one, without authority from the bank's directors, to make, draw, issue, put forth or assign a number of obligations. The third clause makes it a federal offense for one to make a false entry in the books of such a bank with intent to defraud. The class, in the third clause, is not restricted to bank officials and employees, and, of course, violation is not dependent upon an absence of authorization by the directors.

A diminishing class restriction is not irrational here. The first clause reaches the unauthorized circulation of notes, an act which might be done by a thief. Congress reasonably could have thought the federal offense should be limited to

4. Section 1005 of Title 18, United States Code provides:

"Whoever, being an officer, director, agent or employee of any Federal Reserve Bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

"Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

"Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both. * * * "

bank officials and employees in positions of trust. The offenses in the first two clauses are dependent upon the absence of authorization, and none of the listed acts would violate any law if done under the authority of the bank's directors. False entries in a bank's books stand on a different plane, however. They can hardly be accomplished by anyone except those in positions of trust having access to the bank's records. Prior authorization or subsequent ratification can not legitimate them. If we are not to import by implication into the third clause the absence of authority condition of the first two clauses, there is no compelling reason to suppose that the class limitations of the first clause should be found by broad implication in the third.

In comparable statutes, when Congress has intended class limitations to carry through to subsequent clauses or paragraphs, it has repeated them. 18 U.S. C.A. §§ 207, 1703 and 1712. Supposedly, it would have done the same thing here had it intended class limitations to apply to the third clause.

Substantively, Edick was clearly within the class to which the false entry provision was directed. Congress surely intended to make it a federal offense for one in charge of the records of a national bank or nationally related bank to make false entries in them. As the use of computers expands, if banks find they can utilize them more effectively by setting up their proofing and bookkeeping departments under separate corporate roofs, there is no real change in the relation of the employees of those departments to the business of the bank and its records. There is a strong federal interest in the protection of the integrity of the records of such banks, and that interest is wholly unaffected by corporate splintering undertaken for unrelated business reasons.

We conclude that Congress meant exactly what it said when it provided that, "[w]hoever makes any false entry in any book" of such a bank is guilty of a federal offense.

Since Edick was within the reach of §§ 656 and 1005 and the indictment charged and the proof showed his diversion of the funds of the bank and his making false entries in its records, he can derive no comfort from United States v. Tornabene, 3 Cir., 222 F.2d 875. There an indictment was held insufficient, but it did not purport to charge a violation of § 1005. The defendants were depositors accused of aiding and abetting a violation of § 656, but the indictment failed to charge any primary violation of that section by any bank official. The defendants there were outsiders; Edick was an insider whose own wrongs are proscribed by §§ 656 and 1005.

## II

Edick also complains that he was not allowed to take the witness stand in the presence of the jury for the limited purpose of testifying about the voluntariness of an oral confession. He was told, quite properly we think, that if he became a witness for that purpose, the court would not disallow impeaching cross-examination. Edick then elected not to testify.

When Edick was first confronted in First Service's offices by officials of First Virginia Bank Shares and of First Service and by two F.B.I. agents, he was given the *Miranda* warnings, and he signed a written acknowledgement of them. Orally, he then admitted making false entries in Old Dominion's records.

At a pretrial suppression hearing, Edick testified on the subject of the voluntariness of his confession. He acknowledged that the warnings were given and that he signed the acknowledgement, but, he said, he was quite upset when the officials came in and that he was unconscious of the writing on the paper he signed, or, at least, could not now remember what it said.

After hearing from the other persons present, as well as Edick, the judge found that the admissions were made voluntarily and denied the motion to suppress. The motion was renewed at the trial, and it was then that he sought to testify, in

the jury's presence, with all of the limitations and protection afforded him at the pre-trial hearing.

 Edick was entitled to a fair hearing and a reliable determination of the voluntariness of his admissions at some stage in the proceedings. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. Because of the presence of the problem Edick faced in deciding whether or not to become a witness in the presence of the jury, the Supreme Court held that the hearing should be conducted by the judge in the absence of the jury. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

The proceedings in this case fully met the requirements of Jackson v. Denno and those of our decisions in United States v. Inman, 4 Cir., 352 F.2d 954, and Mullins v. United States, 4 Cir., 382 F.2d 258. In the hearing before the judge, Edick testified fully on the matter of voluntariness of his confession without fear of collateral consequences. The judge, after hearing all of the witnesses, found beyond a reasonable doubt that the admissions had been made voluntarily. The jury was told that it should not consider the admissions unless it found they were made voluntarily, but it, of course, had not heard Edick.

Edick's dilemma, in the presence of the jury, is the reason for Jackson v. Denno's requirement of a full hearing out of the presence of the jury. That hearing, admittedly full and fair, satisfied his constitutional right to a full hearing on the matter and a fair determination. He was not entitled to another such full hearing in the presence of the jury, unless, of course, he was prepared to testify subject to the usual rules of cross-examination. He had no right to limit the cross-examination to those favorable facts to which, alone, he wished to testify. Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078.

### III

During the trial, debit slips, deposit slips into the account of Terry Harris, computer printouts and master tapes, prepared in the Proof Department of First Service and containing data entered into the computer, were introduced in evidence. Some of these constituted the false entries, and all of them were properly connected to Edick.

These exhibits were admissible under the provisions of 28 U.S.C.A. § 1732(a) as business records.

Edick has had a fair trial, free of error.

Affirmed.