UNITED STATES of America, Plaintiff,

v.

Charlene EDWARDS, Defendant.

Crim. No. N–83–23.

United States District Court,
D. Connecticut.

June 28, 1983.

Calvin B. Kurimai, Asst. U.S. Atty. (Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., for plaintiff.

Richard Reeve, Asst. Federal Public Defender (Thomas Dennis, Public Defender, D. Conn., Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS THE INDICTMENT

DALY, Chief Judge.

Defendant, a teller at First Bank in Connecticut, has moved to dismiss the indictment in this case which charges her in five counts with having made or caused to be made false entries in her statement of accounts at First Bank in violation of 18 U.S.C. § 1005. Specifically, the indictment accuses defendant of having deposited five separate checks into her account which she knew were not supported by sufficient funds. In her Motion to Dismiss, defendant claims that such actions do not fall within 18 U.S.C. § 1005 because (1) under *Williams v. United States,* —— U.S. ——, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), the depositing of a worthless check in a bank account does not constitute or cause the making of a "false entry" and (2) no false entry is made when a worthless check is listed as a deposit on a statement of account since the entry itself is not false but simply reflects that checks were deposited. At oral argument

on the motion counsel for defendant raised what is essentially a third ground for dismissal, *i.e.,* that the section of 18 U.S.C. § 1005 which defendant is accused of violating should be construed as applying only to actions committed by bank officers, directors, agents or employees and only to those actions of such individuals that are committed in connection with their role as bank employees. Because the indictment did not indicate in what way, if any, defendant's role as a bank employee was connected to the false entries she was alleged to have caused to have been made,[1] defendant sought a bill of particulars from the government, which has now been supplied.

Having considered the statute at issue here, as well as the pre-1948 criminal code revision predecessor statute, 12 U.S.C. §§ 592, 597 (1940 ed.), the relevant case law, the indictment and bill of particulars in this case, and Justice Blackmun's analysis in *Williams, supra,* of a related statute, 18 U.S.C. § 1014, the Court concludes that the indictment must be dismissed on the basis of the third ground asserted by defendant.

The statute at issue here, 18 U.S.C. § 1005, provides as follows:

"Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

As previously noted, defendant is accused of making and causing to be made false entries in her statement of accounts at the bank which employed her, which conduct is assertedly proscribed by the third paragraph of § 1005.

By its terms, that paragraph would appear to apply to anyone, regardless of whether or not the accused was employed by or otherwise connected to the bank in question. However, examination of the statute's predecessor convinces this Court that such a broad application was never intended. Section 1005 is based on 12 U.S.C. §§ 592, 597 (1940), Banks and Banking (R.S. 5209, Dec. 23, 1913, c. 6 § 22(i), as added June 19, 1934, c. 653, § 3, 48 stat. 1107; Sept. 26, 1918, c. 177, § 7, 40 Stat. 972; Aug. 23, 1935, c. 614, § 316, 49 Stat. 712). The earlier statute, which was separated into three sections by the 1948 revision and codification of the criminal code, provided in pertinent part as follows:

"*Any officer, director, agent, or employee of any Federal reserve bank, or of any member bank . . .[2] who . . .[3]* without authority from the directors of such Federal reserve bank or member bank, issues or puts in circulation any of the notes of such Federal reserve bank, or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any ac-

---

**1.** It is not disputed that § 1005 proscribes not only making false entries, but *causing* false entries to be made. *See, e.g. Agnew v. United States,* 165 U.S. 36, 38–39 [17 S.Ct. 235, 236–237, 41 L.Ed. 624] (1897).

**2.** The deletion indicated refers to the definition of "member bank."

**3.** Deleted is the statute's prohibition against the embezzlement, abstraction, or misapplication of bank funds by bank officers, directors, agents or employees, presently codified at 18 U.S.C. § 656.

ceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree, *or who makes any false entry in any book, report, or statement of such Federal reserve bank or member bank, with intent in any case to injure or defraud such Federal reserve bank or member bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such Federal reserve bank or member bank, or the Comptroller of the Currency, or any agent or examiner appointed to examine the affairs of such Federal reserve bank or member bank or the Federal Reserve Board . . .*[4] shall be fined not more than $5,000 or shall be imprisoned for not more than five years, or both, in the discretion of the court."

40 Stat. 972, § 5209, 65 Cong.Sess. II, Ch. 177 (1918) (emphasis added; script portion identifies what is now ¶ 3 of the present § 1005).

It is clear that all three of the pre-1948 revision statute's prohibitions, currently set forth in separate paragraphs in 18 U.S.C. § 1005, applied only to "officer[s], director[s], agent[s], or employee[s]" of the protected banks. The Reviser's Note to § 1005 specifically states that "no changes of meaning or substance were made except that . . . the different punishment provisions were reconciled, and one uniform punishment provision was adopted." 18 U.S. C.A. § 1005, "Historical and Revision Notes"; *see also* Reviser's Note under 18 U.S.C.A. § 656. Thus, if the substance of the present § 1005 was to comport with that of its predecessor statute, then the third paragraph of § 1005 must be construed as applying only to bank officers, directors, agents, or employees, and not to the public at large or customers otherwise unconnected to the protected bank.

■ Be that as it may, defendant here *is* an employee of the bank whose records are in issue in this case. However, it is clear to the Court that § 1005 is intended not simply to apply only to bank officers, directors, agents and employees, but also to reach only such conduct as is performed by such individuals in their capacity as bank officers, directors, agents, or employees. Otherwise, the limitation to such individuals would seem to be wholly arbitrary and meaningless.

■ The conduct alleged in the present indictment and bill of particulars which the government claims constitutes a violation of § 1005 is simply defendant's deposit of worthless checks into her bank account. There is no assertion—in the indictment or the bill of particulars—that defendant was acting in her capacity as a bank employee in depositing the alleged checks, or that her role as a bank employee played any part in the false entries which allegedly resulted from the check deposits. The only assertion regarding defendant's status as a bank employee is that "defendant, as a teller of First Bank, would have had immediate access to her account information maintained in the bank's computer." Government's Bill of Particulars. Such access to information has no bearing on the alleged making or causing to be made of false entries in the bank's records. Furthermore, any bank customer would have virtually the same access to the computer's data simply by requesting it or, in some cases, by pressing the appropriate buttons on a bank machine. The conduct that is alleged to have constituted a violation of § 1005 is conduct undertaken in one's capacity as a bank *customer,* not a bank employee.

The government has cited no case, nor has the Court found any, in which § 1005 has been construed as applying to any persons other than bank officers, directors, agents, or employees whose criminal conduct was made possible or at least facilitated in some significant manner by their bank-roles.[5] According to the allegations

---

4. Deleted is a prohibition against embezzlement, abstraction, purloining or misapplication of bank funds directed at receivers of national banking associations, also presently codified at 18 U.S.C. § 656.

5. *E.G. Agnew v. United States,* 165 U.S. 36, 38–39, 17 S.Ct. 235, 236–237, 41 L.Ed. 624

contained in the indictment and bill of particulars in this case, the defendant, although a bank employee, acted solely in her role as a bank customer in allegedly depositing the checks in question. In *United States v. Austin,* 585 F.2d·1271 (5th Cir. 1978), a bank customer was found guilty under 18 U.S.C. § 2 of aiding and abetting bank officers in an elaborate scheme to make false entries in the bank's records, which scheme involved, among other things, the depositing of worthless checks into Austin's account. That case is inapposite here, however, since defendant Edwards is not charged with aiding and abetting the making of false entries, but with making or causing to be made false entries. Under the government's own factual allegations, defendant is not charged with either making false entries herself or with causing those entries to be made *in her role as a bank employee.*

■ Under the government's theory, § 1005 may be interpreted as a federal "bad check" statute, under which anyone acting simply in their capacity as a bank customer could be prosecuted for depositing worthless checks. This Court does not believe

such a broad interpretation of the statute is either justified or warranted, nor does it believe that § 1005 was intended to be a federal "bad check" statute.[6] Had Congress wished to pass such a statute of general applicability—to bank customers as well as bank officials or agents—it could have done so far more explicitly. It appears from the indictment and bill of particulars filed in this case that defendant acted solely as a bank customer and that it is mere happenstance that she is a bank employee. The Court concludes that § 1005 was not intended to apply to the depositing of worthless checks by individuals acting solely within their capacity as bank customers. Accordingly, the indictment in this case must be dismissed.[7]

IT IS SO ORDERED.

(1897) involved a bank president who took a check belonging to the bank and had it deposited to his personal account. *United States v. Darby,* 289 U.S. 224, 53 S.Ct. 573, 77 L.Ed. 1137 (1933), involved an assistant bank cashier who, "in the course of his employment," entered in the bank's discount book, a series of promissory notes carrying the forged signatures of an ostensible co-maker. In *United States v. Krepps,* 605 F.2d 101 (3d Cir.1979), a bank Vice President and loan officer authorized loans to third parties without indicating in the loans or bank records that he was to be the ultimate beneficiary of the proceeds of the loans. In *United States v. Gleason,* 616 F.2d 2 (2d Cir. 1979), the Chairman of the Board, the President and the Senior Vice President of Franklin National Bank were accused of making false entries in the bank's records by overvaluing securities owned by the bank and by causing the bank to enter into fictitious foreign exchange contracts in order to conceal the bank's operating losses. In *United States v. Edick,* 432 F.2d 350 (4th Cir.1970), the defendant, a manager of a corporation established by its parent corporation to provide proofing and bookkeeping services to the parent corporation's member banks, diverted bank service charge income to the personal account of his coconspirator.

**6.** *Cf.* Justice Blackmun's analysis in *United States v. Williams,* —— U.S. ——, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) of a related statute, 18 U.S.C. § 1014. In *Williams,* the Supreme Court held that the depositing of a worthless check did not constitute the making of a false statement within the meaning of § 1014. Justice Blackmun, writing for the majority, reasoned that the government's assertion that such conduct was encompassed by § 1014, "would make a surprisingly broad range of unremarkable conduct a violation of federal law.... Federal action was not necessary to interdict the deposit of bad checks, for, as Congress surely knew, fraudulent checking activities already were addressed in comprehensive fashion by state law." *Id.,* 102 S.Ct. at 3093.

**7.** In view of the instant ruling, the Court need not reach defendant's alternative arguments regarding whether or not the deposit of a worthless check constitutes the making of a "false entry" in a bank's books and records within the meaning of § 1005 and in light of the Supreme Court's decision in *Williams.*