14-4791-cr
United States v. Lowe

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of November, two thousand sixteen.

PRESENT:  ROBERT D. SACK,
          REENA RAGGI,
          DENNY CHIN,
                    *Circuit Judges*.
-------------------------------------------------------------------
UNITED STATES OF AMERICA,
                    *Appellee*,


          v.                                     No. 14-4791-cr


MELVIN E. LOWE,
                    *Defendant-Appellant*.
-------------------------------------------------------------------
APPEARING FOR APPELLANT:    TINA SCHNEIDER, Law Office of Tina Schneider, Portland, Maine.

APPEARING FOR APPELLEE:     PERRY A. CARBONE, Assistant United States Attorney (Karl Metzner, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Vincent L. Briccetti, *Judge*).

1

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on December 23, 2014, is AFFIRMED.

Defendant Melvin E. Lowe was convicted after a jury trial of substantive and conspiratorial wire fraud, 18 U.S.C. §§ 1343, 1349; failing to file and subscribing to false tax returns, 26 U.S.C. §§ 7203, 7206(1); and causing a false entry in a statement of a federally insured bank, 18 U.S.C. §§ 1005, 2. Currently serving a 36-month prison sentence for these crimes, Lowe challenges (1) the failure to charge the jury on the defense of "reliance on a tax preparer"; (2) evidentiary rulings excluding hearsay statements from his tax-return preparer, but admitting out-of-court communications between Lowe and former New York State Senator John Sampson; (3) the sufficiency of the evidence supporting the wire fraud and false bank statement counts of conviction; and (4) the denial of his motion for a new trial. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Denied Tax-Preparer Defense Instruction

Lowe argues that the district court should have charged the jury that he could not have acted with the willfulness necessary for the charged tax crimes if he relied on his "tax preparer's advice without having any reasonable basis to believe that the advice was [in]correct." Appellant's Br. 32. To prevail on that claim, Lowe must show that the requested charge accurately represented the law in every respect and that the charge given was prejudicial as well as erroneous. See United States v. Rowland, 826 F.3d 100, 115 (2d Cir. 2016). Lowe cannot satisfy this standard because, as the district court

found, a tax-preparer defense in his case lacked the requisite basis in the evidence. See United States v. Evangelista, 122 F.3d 112, 116–17 (2d Cir. 1997). For the defense to apply, there must be some evidence that defendant (1) sought the advice of a presumably competent accountant, (2) made full and accurate disclosure to the accountant, (3) strictly followed the accountant's advice, and (4) had no reason to think the advice was incorrect. See id. at 117 (citing Williamson v. United States, 207 U.S. 425, 453 (1908)); Leonard B. Sand et al., 2 Modern Federal Jury Instructions, Instr. 59-9 (2016). Here, the only evidence Lowe proffered regarding his tax-preparation activities came from his life partner, Mariame Camara, who testified that Lowe's accountant had stated that Lowe could file personal returns first and business returns later. Wholly missing was any evidence that Lowe provided his accountant with a full and accurate disclosure of his income, that he believed the sequential-filing advice, or that he followed it. Rather, these elements of the defense are belied by Lowe's personal returns, which reported as business income on his IRS Form 1040, Schedule C, an amount equal to only ten percent of his actual earnings. See, e.g., Trial Tr. 513; App'x 84, 86, 93, 95, 100, 102, 108, 110, 114, 116. Lowe offered no evidence that he filed supplemental "business" returns. Indeed, the evidence indicated that he filed no returns at all for tax years 2010, 2011, and 2012. Accordingly, on this record, the district court correctly declined to instruct the jury on the tax-preparer defense. See generally United States v. Evangelista, 122 F.3d at 117 (stating that defendants are not entitled to rely on alleged advice that "deferring" tax payments was proper where defendants did not follow that advice). The court's willfulness charge was sufficient to instruct the jury adequately as to the mens rea

3

requirement of the crime charged and to avoid any prejudice to Lowe. See United States v. Sabhnani, 599 F.3d 215, 237 (2d Cir. 2010) (observing that successful jury instruction challenge requires showing of "both error and ensuing prejudice" when "viewing the charge as a whole" (citation omitted)).

2.    Evidentiary Challenges

We review Lowe's challenge to evidentiary rulings for abuse of discretion. See United States v. Rowland, 826 F.3d at 114.   We conclude that the district court did not abuse its discretion here.

a.    Excluded Tax-Preparer Statements

Lowe asserts that out-of-court statements from his tax preparer were admissible (1) to impeach the preparer's statements in Lowe's tax returns, see Fed. R. Evid. 806; and (2) as substantive evidence under Fed. R. Evid. 804(b)(3) (statements against penal interest) and 807 (residual hearsay exception).

Lowe's impeachment argument fails because his tax returns were not statements by the tax preparer—who did not sign them—but, rather, statements by Lowe himself. See Trial Tr. 569–70.   Accordingly, the district court did not abuse its discretion in concluding that there was no preparer testimony to impeach under Fed. R. Evid. 806.

Lowe's Rule 804(b)(3) and 807 arguments also fail.   The former rule requires that the proffered statement both "expose the declarant to . . . criminal liability" and be "supported by corroborating circumstances that clearly indicate . . . trustworthiness." Fed. R. Evid. 804(b)(3).   Rule 807 similarly demands "circumstantial guarantees of trustworthiness."   The absence of such circumstances confirms that the district court

4

acted within its discretion. Further, the statements to which these arguments pertain were made after the preparer pleaded guilty, while attempting to avoid a sentencing enhancement for the use of a "special skill." See Trial Tr. 628–36. Accordingly, the district court did not abuse its discretion in declining to admit such statements, which were designed to mitigate—not enhance—the preparer's criminal liability. See United States v. Tropeano, 252 F.3d 653, 658 (2d Cir. 2001) (holding that non-self-inculpatory portions of defendant's plea allocution were not admissible under Rule 804(b)(3)); see also Williamson v. United States, 512 U.S. 594, 604 (1994) (opinion of O'Connor, J.) (observing that statement intended to decrease liability "at least so far as sentencing goes" does not fall under penal-interest exception); United States v. Albert, 773 F.2d 386, 389 (1st Cir. 1985) (holding Rule 804(b)(3) inapplicable to statement at sentencing allocution where defendant's purpose was to "help [himself], not to be sentenced to a longer term of incarceration"). Accordingly, the district court did not abuse its discretion in declining to admit such statements under Rule 804(b)(3).

b. Lowe-Sampson Conversations

Lowe argues that a witness's account of overheard conversations between Lowe and Sampson regarding money that the former owed (and later paid) to the latter was irrelevant and prejudicial. The district court admitted the conversations for the limited purpose of demonstrating the men's relationship of trust, as background to the events at issue. It specifically instructed the jury that (1) Lowe was not charged with any criminal conduct in connection with the transfer of money on the debt obligation, and (2) the evidence should not be considered for any purpose other than to establish the men's

5

relationship. Trial Tr. 253–54. These actions fell within the district court's discretion under Fed. R. Evid. 403 and 404(b). See United States v. Williams, 205 F.3d 23, 33–34 (2d Cir. 2000) (holding uncharged bad acts admissible to "inform the jury of the background" of charged conduct or "to . . . explain to the jury how the illegal relationship between the participants in the crime developed" (citation omitted)). In urging otherwise, Lowe argues that other trial evidence demonstrated the relationship of trust between Lowe and Sampson. Even if this is so, that only renders the evidence cumulative, which does not necessarily equate to irrelevant or prejudicial. Any concerns in that regard were dispelled by the district court's limiting instruction. See Trial Tr. 253–54. Accordingly, we identify no abuse of discretion.

3. Sufficiency of the Evidence

Although we review a sufficiency challenge de novo, the defendant bears a heavy burden because we must view the evidence in the light most favorable to the government and can affirm the jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); accord United States v. Harvey, 746 F.3d 87, 89 (2d Cir. 2014). This case presents no sufficiency concern because the evidence of Lowe's guilt was compelling.

a. Wire Fraud

As to the wire fraud counts, Lowe argues that the government failed to prove that the $100,000 he received from the New York State Democratic Senate Campaign Committee ("DSCC") was fraudulently obtained, rather than payment for legitimate

6

printing services relating to a mailing campaign. While Lowe submitted evidence that some draft advertisements were created for the referenced campaign, the government's evidence indicated that the drafts were created after the fact in response to a negative magazine exposé on the DSCC's payment to Lowe. See Trial Tr. 255–57, 457–62. Indeed, the prosecution evidence showed that the $100,000 payment was never intended for printing services, but, rather, was a means to channel some $20,000 to political consultant Michael Nieves, with Lowe keeping approximately $75,000, which he used to build a pool and make other home improvements unbeknownst to the DSCC. See Trial Tr. 247–48, 264, 319–25, 351–53. This evidence, viewed most favorably to the government, was sufficient to convict Lowe of the charged wire fraud counts. Thus, the district court did not err in denying Lowe's motion for a directed verdict.

b. False Entry in a Statement of a Federally Insured Bank

Lowe argues that the evidence was insufficient to prove that the verification-of-deposit form that he caused a bank employee to sign amounted to a "false entry in [a] book, report, or statement" of a bank, 18 U.S.C. § 1005. The point merits little discussion. Trial evidence showed that, in order to secure a $200,000 mortgage loan, Lowe falsely claimed to have $80,000 on deposit at Commerce Bank when, in fact, his balance during the relevant time period was approximately $10,000. See Trial Tr. 168. To corroborate his false claim and thus obtain the loan, Lowe persuaded the assistant manager of a Commerce Bank branch (with whom he was friends, see Trial Tr. 157) to execute and transmit a verification-of-deposit form substantially overstating his account balance. Lowe offers no adequate explanation why this verification-of-deposit

7

form, created by a Commerce Bank employee, would not amount to a statement of that federally insured institution.

Lowe also challenges the sufficiency of the evidence to prove his intent to defraud the lender, Premium Capital Funding, given his professed intent to repay the loan. The argument fails because our precedent recognizes an intent to defraud when a party employs falsehood to deprive a person of the right to control its own assets. See, e.g., United States v. Binday, 804 F.3d 558, 570 (2d Cir. 2015). As we have stated in upholding a mail fraud conviction,

> [W]here a defendant deliberately supplies false information to obtain a bank loan, but plans to pay back the loan and therefore believes that no harm will "ultimately" accrue to the bank, the defendant's good-faith intention to pay back the loan is no defense because he intended to inflict a genuine harm upon the bank—i.e., to deprive the bank of the ability to determine the actual level of credit risk and to determine for itself on the basis of accurate information whether, and at what price, to extend credit to the defendant.

United States v. Rossomando, 144 F.3d 197, 201 (2d Cir. 1998) (citation omitted). By having a Commerce Bank employee transmit a false account-verification form to Premium Capital Funding in support of his loan application, Lowe evinced a similar intent to deprive that lender of the accurate information it required in deciding how to dispose of its assets. This allowed a reasonable jury to find Lowe's "intent to defraud." Insofar as Lowe objects to application of the right-to-control theory to 18 U.S.C. § 1005, he provides no basis in law or fact for distinguishing the fraud proscribed in that statute from that in the mail and wire fraud statutes. See United States v. Snow, 670 F.2d 749, 753 (7th Cir. 1982) (comparing intent element under "similar" financial fraud statutes,

8

such as mail fraud, 18 U.S.C. § 1341; making false bank entries, 18 U.S.C. § 1005; and counterfeiting securities, 18 U.S.C. § 472).

Finally, Lowe argues that he cannot be convicted under § 1005 because the statute, by its terms, applies only to bank employees. See 18 U.S.C. § 1005 ("Whoever, being an officer, director, agent or employee of any [federally insured bank] . . . without authority from the directors of such bank . . . issues or puts in circulation any notes" or "[w]hoever makes any false entry in any book, report, or statement of such bank, . . . [s]hall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."). Compare United States v. Barrel, 939 F.2d 26, 39–41 (3d Cir. 1991) (construing restrictive phrase in first "whoever" clause—"being an officer, director, agent, or employee"—to also limit parties liable for making false entries in the subsequent "whoever" clause (citing United States v. Edwards, 566 F. Supp. 1219, 1220 (D. Conn. 1983))), with United States v. Edick, 432 F.2d 350, 352–53 (4th Cir. 1970) (holding that "whoever makes any false entry in any book" is not limited to bank employees); cf. United States v. Wells Fargo Bank, N.A., 972 F. Supp. 2d 593, 627–28 (S.D.N.Y. 2013) (holding that "whoever" clause added by subsequent amendment was not limited to bank employees). The argument fails because Lowe was charged with aiding and abetting the bank employee's violation of § 1005, conduct for which he is liable under 18 U.S.C. § 2. See United States v. Castiglia, 894 F.2d 533, 534, 535 n.4 (2d Cir. 1990) (affirming conviction of bank outsider for aiding and abetting employee's § 1005 violation); see also United States v. Sindona, 636 F.2d 792, 795 (2d Cir. 1980) (upholding conviction of bank outsider for conspiracy to violate § 1005). Because the

9

evidence overwhelmingly establishes Lowe's guilt for <u>aiding and abetting</u> the bank employee's violation of the statute, his sufficiency challenge to the § 1005 conviction fails.

4.      <u>Motion for a New Trial</u>

Lowe argues that he was entitled to a new trial when, shortly after verdict, his prosecutor learned from counterparts in the Eastern District of New York that cooperating witness Michael Nieves had been the subject of a court-ordered FBI wiretap—for a little less than two weeks—four years earlier.   Lowe argues that he could have used this evidence to impeach Nieves about his conversations with Senator Sampson, which were relevant to the wire fraud charges.

The district court has "discretion to grant a new trial based on newly discovered evidence if, among other things, the evidence is so material and non-cumulative that its admission would probably lead to an acquittal."   <u>United States v. Amato</u>, 540 F.3d 153, 164 (2d Cir. 2008).   Such a motion is granted, however, "only <u>in the most extraordinary circumstances</u>" and requires the defendant to demonstrate that the evidence "could not have been discovered through the exercise of due diligence before or during trial, and that the evidence is so material and noncumulative that its admission would probably lead to an acquittal."   <u>United States v. Parkes</u>, 497 F.3d 220, 233 (2d Cir. 2007) (emphasis in original) (internal citations and quotation marks omitted).   New evidence that "merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial."   <u>United States v. Spencer</u>, 4 F.3d 115, 119 (2d Cir. 1993) (internal citations and quotation marks omitted).   "We review a

district court's denial of a motion for a new trial based on newly discovered evidence for abuse of discretion." United States v. Vernace, 811 F.3d 609, 620 (2d Cir. 2016) (citations omitted).

No such abuse is evident here. Nieves testified that Lowe had diverted $20,000 of the $100,000 DSCC payment to him. On cross-examination, Lowe's counsel neither disputed the payment nor impeached Nieves, though material for doing so was available. See Trial Tr. 413–19. Rather, in summation, counsel argued that payments to Nieves were not "improper" because they compensated him for past work. In these circumstances, new impeachment evidence that did not "directly contradict the government's case," United States v. Spencer, 4 F.3d at 119, fails to satisfy the "extraordinary" burden necessary for a new trial, United States v. Parkes, 497 F.3d at 233.

5.    Conclusion

We have considered Lowe's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

11