05-1486-cr
United States v. Parkes

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: November 13, 2006      Decided: August 15, 2007)

Docket No. 05-1486-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

Appellee,

-v.-

OTIS PARKES,

Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x

Before:      JACOBS, Chief Judge, McLAUGHLIN and
             CALABRESI, Circuit Judges.

Appeal from a judgment of conviction entered by the United States District Court for the Southern District of New York (Kaplan, J.).  The principal question regards the nature of the evidence required to satisfy the interstate commerce element of the Hobbs Act, 18 U.S.C. § 1951.

The conviction is affirmed and the case is remanded for re-sentencing.

1

JAMES M. BRANDEN, Law Office of James M. Branden, New York, New York, for Defendant-Appellant.

RICHARD C. DADDARIO, Assistant United States Attorney (Celeste L. Koeleveld, Assistant United States Attorney, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, for Appellee.

DENNIS JACOBS, Chief Judge:

Defendant-appellant Otis Parkes appeals from a judgment entered in the United States District Court for the Southern District of New York (Kaplan, J.), convicting him on multiple counts arising out of his participation in a botched robbery targeting drugs and drug proceeds, during which the victim was shot and killed by one of Parkes's two coconspirators.

Parkes argues (I) that the evidence adduced to prove a nexus with interstate commerce under the Hobbs Act, 18 U.S.C. § 1951(a), was insufficient, and that in any event the district court abused its discretion by allowing the government to reopen its case to adduce (some of) that evidence; (II) that the evidence was insufficient to support Pinkerton liability for the murder; (III) that the district

2

court abused its discretion by refusing to grant a new trial based on newly discovered evidence that a cooperating witness had plotted to kill another witness; and (IV) that the prosecutor made prejudicial statements in summation.

We hold (contrary to the position argued by the government) that the Hobbs Act requires the jury to find that a robbery of drugs and drug proceeds affects interstate commerce; but we conclude that sufficient evidence was introduced as to the attempted robbery in this case. We reject defendant-appellant's remaining challenges, but vacate and remand in order to allow the district court to correct certain specified errors in the sentence calculation.

**Background**

The Robbery. Viewed in the light most favorable to the government,[1] the evidence adduced at trial (the substance of which stands unchallenged by Parkes) was as follows.

---

[1] On a challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." United States v. Arena, 180 F.3d 380, 391 (2d Cir. 1999) (internal quotation marks omitted).

In June 2003, Steven Young proposed to Parkes and Duane Beaty that they rob a drug dealer, Ruben Medina. Beaty (who became a cooperating witness) testified that Young "explain[ed] to us how he knew a drug dealer [Medina] that had money and drugs on the table selling out of a little room, and he just had the stuff spread out on the table, and it would be easy to go in and rob him and leave with the proceeds." Trial Tr. at 265 (Oct. 25, 2004). In the early morning hours of June 17, 2003, Parkes, Beaty and Young met in Parkes's Jeep; Young confirmed that the other two were "packing" guns. Trial Tr. at 272 (Oct. 25, 2004). Parkes drove to Medina's building, waited until someone came out, and the three slipped in.

The door to Medina's apartment was unlocked; the robbers entered with guns drawn, and began binding the people who had been sleeping in the various rooms. While this was going on, Medina entered the apartment with his girlfriend, Delilah Lugo. Young ordered Lugo into Medina's room with Parkes (where a clear plastic bag was put over her head and a gun stuck in her face), but kept Medina in the hallway with himself and Beaty.

While Beaty questioned Medina in the hall about the

4

drugs and money, Young struck one of the residents, causing his head to bleed, and then brought him to Medina's room where Parkes restrained him with duct tape. Beaty testified that he feared Young was getting "out of hand," so he called Young to stay with Medina while Beaty returned to Medina's room and broke the lock to the closet in which he suspected the drugs and proceeds were hidden. Trial Tr. at 281, 282 (Oct. 25, 2004)

As Beaty was searching the closet, he heard Young threatening to shoot Medina, followed by a gun shot. Beaty ran to the hall, saw Medina shot and lying on his side, and watched Young shoot Medina two more times in his back.

The robbers fled to the Jeep, and headed toward Beaty's apartment. Young, who was going elsewhere, got out to take a cab. The police confronted Parkes and Beaty soon after they arrived at Beaty's place. One officer searched the Jeep and alerted his partner that he found a gun; Parkes ran off and Beaty was arrested. The police search of Parkes's Jeep yielded: (1) a loaded handgun; (2) a pair of gloves with Parkes's DNA on the inside and, on the outside, the blood of the man Young had assaulted and Parkes had bound; (3) a wallet containing Parkes's identification; (4) a roll

of duct tape of the type used to bind the people in the apartment; and (5) a cell phone which Medina had been carrying on the night he was shot.

The Trial.  The events of the robbery were recounted at trial by Beaty, Medina's girlfriend Lugo, police officers, and residents of the apartment.  Additionally,  a friend of Parkes testified he came to her place early in the morning of June 17 and made a series of phone calls; in one call, Parkes told someone to report the Jeep stolen.  She also testified that, weeks later, Parkes told her that he had been involved in a shooting, had his Jeep searched by police, and ran away when the police found a gun.  A detective testified that his search of Medina's room yielded $4,000 in a jacket pocket hanging in Medina's closet, one large bag of marijuana, and 58 smaller "nickel bags."

After the government rested, Parkes moved for acquittal under Federal Rule of Criminal Procedure 29 on the grounds that the government had failed to satisfy the Hobbs Act's interstate commerce element, and had not, for the purpose of Pinkerton liability, adduced evidence that Medina's murder was reasonably foreseeable.  The district court denied Parkes's motion.

6

The issue of interstate commerce arose again during the charge conference. Initially, the court's proposed Hobbs Act charge required the jury to find that the attempted robbery "potentially affected interstate commerce." Trial Tr. at 480 (Oct. 26, 2004). But during the charge conference, the district judge briefly changed course: he said that he intended to remove that language from the charge and substitute language instructing that "if the object of the robbery is to obtain illegal drugs or money earned from the sale of drugs, the requirement of an effect on interstate commerce is satisfied." Trial Tr. at 392 (Oct. 26, 2004). Such an instruction, if delivered, would have obviated proof that the robbery affected interstate commerce, and instead required only a finding that the object of the robbery was drugs or their proceeds, on the theory that such a robbery affects interstate commerce ipso facto. But on the next morning, the court distributed a redlined charge which retained the original language requiring the jury to find that the robbery affected interstate commerce, and not simply that the object of the robbery was drugs or drug proceeds. The government, objecting, argued that its presentation of evidence was

7

premised on the assumption that the jury would not need to affirmatively find that the robbery affected interstate commerce, but rather would only have to find that the target of the robbery was drugs or proceeds. The judge overruled the objection, but allowed the government to reopen its case (over defense objection) to supplement the record.

The government called an experienced government investigator who testified (inter alia) that: marijuana "is almost exclusively trucked into the United States, predominantly through Mexico"; "[v]ery little" marijuana is grown in New York; and approximately five percent of the arrests the investigator made in the Bronx were of out-of-state purchasers of marijuana. Trial Tr. at 408-16 (Oct. 26, 2004). On cross examination, the investigator conceded that he did not know the origin of the marijuana in Medina's room, and that marijuana can be grown indoors and outdoors in New York State.

Consistent with the court's final ruling, the jury was instructed that it had to find that the robbery affected interstate commerce. Parkes was convicted on all counts. The district court denied Parkes's post-verdict Rule 29 motion for acquittal on the ground that the evidence was

8

insufficient to satisfy the interstate commerce element of the Hobbs Act. The court also denied Parkes's Rule 33 motion for a new trial, which was premised on his assertion that the prosecutor had misstated the law to the jury in summation by stating that "[d]rug dealing affects interstate commerce" and "robberies that seek drugs and drug money do so as well." Trial Tr. at 439-40 (Oct. 25, 2004). On February 25, 2005, the district court sentenced Parkes to life imprisonment.

Nearly seven months later, the government notified Parkes that it had recently learned that, before Duane Beaty cooperated with the government, he had taken steps to have a witness in this case killed. Parkes promptly filed a second Rule 33 motion, which was also denied by the district court.

**I**

Parkes challenges the sufficiency of the evidence to prove the Hobbs Act's interstate commerce element. "A defendant challenging the sufficiency of the evidence bears a heavy burden . . . ." United States v. Pipola, 83 F.3d 556, 564 (2d Cir. 1996) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)); see also United States v.

Giovanelli, 464 F.3d 346, 349 (2d Cir. 2006) (per curiam).
On a sufficiency challenge, "we view the evidence in the
light most favorable to the government, drawing all
inferences in the government's favor and deferring to the
jury's assessments of the witnesses' credibility." United
States v. Arena, 180 F.3d 380, 391 (2d Cir. 1999) (internal
quotation marks omitted). We will sustain the jury's
verdict so long as "any rational trier of fact could have
found the essential elements of the crime beyond a
reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319
(1979) (emphasis in original); see also United States v.
Schwarz, 283 F.3d 76, 105 (2d Cir. 2002).

As Parkes demonstrates, there was no particularized
evidence as to the interstate nature (vel non) of Medina's
drug-dealing business: i.e. the origin of his marijuana, his
suppliers, the route and instrumentality of delivery to
Medina, his buyers,[2] or his use of the proceeds from drug
sales. In testimony introduced by the government to prove
the interstate nature of drug dealing generally, the witness
(a law enforcement officer) acknowledged that marijuana is

---

[2] There was one limited exception--one of Medina's
roommates testified that he occasionally purchased marijuana
from Medina.

10

grown within New York State, and that ninety-five percent of the drug arrests he made in the Bronx were of New York State residents.  Parkes argues therefore that evidence that Medina was "a local, part-time marijuana dealer" is insufficient to support Hobbs Act liability.

Accordingly, this sufficiency challenge under the Hobbs Act squarely presents a predicate question: whether evidence that the target of a robbery was drugs or their proceeds is sufficient as a matter of law to prove the requisite nexus with interstate commerce.  If (as the government asserts) a robbery targeting drugs or their proceeds affects interstate commerce as a matter of law, then no evidence of an effect on interstate commerce would have been necessary: evidence that the target of the robbery was drugs or proceeds would be enough.  Because it is uncontested on appeal that the object was to rob marijuana and proceeds, Parks's challenge would plainly fail under such a per se rule, and we would have no need to consider the record evidence of an interstate effect.  But if the Hobbs Act does require proof of an effect on interstate commerce--that is, if a robbery does not affect interstate commerce as a matter of law merely because drugs or proceeds were its target--then we

11

must consider whether the limited evidence adduced here was sufficient to support Parkes's Hobbs Act conviction.

**A**

The Constitution "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 509-10 (1995); see also id. at 518-19 (describing the "uniform general understanding . . . that the Fifth and Sixth Amendments require conviction by a jury of all elements of the crime" (emphasis in original)); Sullivan v. Louisiana, 508 U.S. 275, 277-78 (1993) ("The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements." (citations and internal quotation marks omitted)).

In pertinent part, the Hobbs Act provides for criminal penalties for anyone who "in any way or degree obstructs,

delays, or affects commerce[3] or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do."[4]  18 U.S.C. § 1951(a).  Proving an effect on interstate commerce is thus an element of a Hobbs Act offense, which must be proven beyond a reasonable doubt to a jury.  See United States v. Wilkerson, 361 F.3d 717, 726 (2d Cir. 2004).  "In a Hobbs Act prosecution, proof that commerce was affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference."  United States v. Elias, 285 F.3d 183, 188 (2d Cir. 2002) (internal quotation marks and emendations omitted).  "There is nothing more crucial, yet so strikingly obvious, as the need to prove the jurisdictional element of a crime."  United States v. Leslie, 103 F.3d 1093, 1103 (2d Cir. 1997).

Whether a robbery affects interstate commerce is a

---

[3] The Hobbs Act defines "commerce" as: "all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."  18 U.S.C. § 1951(b).

[4] For simplicity's sake, we refer to this element as requiring an effect on interstate commerce, because conduct that "obstructs" or "delays" commerce necessarily "affects" it.

mixed question of fact and law: fact insofar as the jury must determine what the robbery targeted, law insofar as it must determine whether the theft of the targeted items affected (or would have affected) interstate commerce.

In United States v. Gaudin, the Supreme Court held that all elements of a crime, including those involving mixed questions of law and fact, must be decided by a jury. See 515 U.S. at 513. Gaudin was charged with making materially false statements on federal loan documents submitted to the U.S. Department of Housing and Urban Development ("HUD"). Id. at 508. At trial, the district court instructed the jury that, as a matter of law, the statements at issue were material. Id. The Supreme Court concluded that materiality was a mixed question of law and fact because (factually) the jury had to determine what was said and what bearing it had on HUD's loan decision, and then (legally) whether that statement was "material" insofar as it had a tendency to influence that decision. See id. at 512. The Court held that "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." Id. at 514. Accordingly, the Court ruled that the district

14

court infringed Gaudin's constitutional "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." Id. at 522-23.

Gaudin undid Second Circuit precedent that treated the interstate commerce element of the Hobbs Act as a matter of law for the judge, as we recognized in United States v. Vasquez, 267 F.3d 79, 89 (2d Cir. 2001). Vasquez reviewed (for plain error) a jury charge regarding a Violent Crimes in Aid of Racketeering ("VCAR") offense, 18 U.S.C. § 1959. 267 F.3d at 86-87. Like the Hobbs Act, the VCAR statute contains a jurisdictional element requiring proof that the prohibited conduct "affect[] interstate . . . commerce." 18 U.S.C. § 1959(b)(2). The district court had instructed the jury that drug trafficking affects interstate commerce as a matter of law. 267 F.3d at 86. On appeal, we observed that this instruction "removed from the jury at least a portion of the jurisdictional element of the VCAR offenses," id. at 88, so that under Gaudin (even on plain error review) the instruction that drug dealing affects interstate commerce as a matter of law might "not pass muster." Id. at 89. (The Constitutionality of the instruction was not categorically

15

decided because Vasquez's conviction was upheld on other grounds.[5]) Vasquez observed that Gaudin directly conflicted with Circuit case law, citing as one example United States v. Calder, 641 F.2d 76 (2d Cir. 1981), which Vasquez described as having held that "in a Hobbs Act case, '[i]t was for the court to determine as a matter of law the jurisdictional question of whether the alleged conduct affected interstate commerce.'" Vasquez, 267 F.3d at 89 (quoting Calder, 641 F.2d at 78). Vasquez thus considered that this aspect of Calder's holding was abrogated by Gaudin. Id.

After Gaudin and Vasquez, it appeared settled that it was for the jury alone to weigh the interstate commerce element of the Hobbs Act. But in United States v. Fabian, this Court held, as a matter of law, that "loan sharking and

---

[5] After reciting, at length, other portions in the charge, we concluded that "[w]hen examined in its entirety, the jury charge stated several times that it was for the jury to find whether the interstate/foreign commerce element had been proven by the government." Vasquez, 267 F.3d at 89. As to the particular instruction discussed in text, the Court stated that while it may have had "concerns" with the propriety of that charge, "Vasquez's claim fails because he cannot satisfy the fourth prong of the plain error test, that the error affected the fairness, integrity, or public reputation of the judicial proceedings." Id. at 89-90 (internal quotation marks and emendations omitted).

16

drug proceeds affect interstate commerce." 312 F.3d 550, 555 (2d Cir. 2002). Fabian was convicted under the Hobbs Act for his participation in two robberies: the first targeted an assumed loan shark; the second, $300,000 in drug proceeds believed to have been stolen from Miami drug dealers. Id. at 553. Fabian argued on appeal that the district court erroneously instructed the jury that interstate commerce was affected as a matter of law by such offenses, and that evidence on the point was insufficient. Id. at 553-58. In affirming, we rejected both arguments on the ground that the interstate commerce element of the Hobbs Act was satisfied as a matter of law by proof that the target was the proceeds of drug or loan sharking activities, id. at 557; for that proposition, we cited to United States v. Genao, 79 F.3d 1333, 1336 (2d Cir. 1996). 312 F.3d at 555.

Genao had rejected a challenge to the constitutionality of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., concluding that "specific [congressional] findings that local narcotics activity has a substantial effect on interstate commerce" rendered the CSA constitutional even as

17

applied to purely intrastate drug crimes.[6] <u>Genao</u>, 79 F.3d

---

[6] In the CSA, at 21 U.S.C. § 801, Congress set forth its findings that both inter- and intrastate drug dealing affect interstate commerce:

> (3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because--
>
> > (A) after manufacture, many controlled substances are transported in interstate commerce,
> >
> > (B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and
> >
> > (C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.
>
> (4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.
>
> (5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.
>
> (6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

18

at 1337.  The Fabian Court incorporated the CSA findings into our Hobbs Act jurisprudence and held that these congressional findings rendered robberies that target drugs or proceeds inherently "within the jurisdiction of the Hobbs Act."  312 F.3d at 555.  From the premise that "drug proceeds affect interstate commerce," Fabian deduced that when the intended target of a robbery is drug proceeds, the Hobbs Act's interstate commerce element is satisfied as a matter of law.  Id. at 555-56.

The government now urges us to follow Fabian, which it argues has been reinforced by the Supreme Court's decision in Gonzales v. Raich, 545 U.S. 1 (2005).  Raich upheld the CSA against an as-applied attack to the criminalization of the intrastate cultivation and use of marijuana, and validated congressional findings (in the CSA) that all drug dealing--even if purely intrastate--affects interstate commerce.  Id. at 22.  The Court affirmed Congress's power to regulate such "purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce," id. at 17 (internal

21 U.S.C. § 801.

19

quotation marks omitted); it "ha[d] no difficulty concluding that Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA," id. at 22.

We now reject the proposition--urged by the government here and previously accepted in Fabian--that findings recited by Congress in the CSA, dispense with the need for a jury finding that each element of the Hobbs Act has been proven beyond a reasonable doubt. This proposition conflates distinct inquiries. Under the CSA, an effect on interstate commerce is not an element; so the inquiry for the Court was the sufficiency of findings by Congress to support that legislative act. Under the Hobbs Act, an effect on interstate commerce is an element of the offense; so the inquiry for this Court is the sufficiency of evidence to support a jury finding on that point.

Subsequent to Fabian, the Supreme Court has sharpened our focus on the separate consideration of each element that composes an offense. See, e.g., United States v. Booker, 543 U.S. 220, 230 (2005). Congressional findings cannot substitute for proof beyond a reasonable doubt. See United

20

States v. Chance, 306 F.3d 356, 377-78 (6th Cir. 2002) (rejecting the proposition that "the prosecution is relieved from proving an essential element of [a Hobbs Act] offense by proof beyond a reasonable doubt where Congress has made findings of fact concerning the area regulated"); United States v. Peterson, 236 F.3d 848, 855 (7th Cir. 2001) (observing that "the government is conflating its burden of proof under two distinct statutory schemes--the Controlled Substances Act . . . and the Hobbs Act," and holding that the "specific findings" in the CSA cannot excuse proof of an effect on interstate commerce in a Hobbs Act prosecution (internal citations omitted)); United States v. Gomez, No. 99 Cr. 740, 2005 WL 1529701, at *9 (S.D.N.Y. June 28, 2005) (McKenna, J.) ("Nothing in [Second Circuit case law] supports the view that the 21 U.S.C. § 801 findings have replaced the traditional Hobbs Act requirement that an effect [on interstate commerce] (however minimal or even potential) be proved."); see also United States v. Balsam, 203 F.3d 72, 89 (1st Cir. 2000) (citing Gaudin for the proposition that the jury instruction that, "as a matter of law[,] the businesses at issue in this case were engaged in interstate commerce" was erroneous because it violated the

21

defendant's constitutional "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged" (internal quotation marks omitted)).  To the extent that <u>Fabian</u> conflicts with this holding, it is no longer good law.[7]

The parties contest the propriety of the jury instructions given here.  In light of the discussion above, we conclude that the district court properly refused the government's request to instruct the jury that "if the object of the robbery is to obtain illegal drugs or money earned from the sale of drugs, the requirement of an effect on interstate commerce is satisfied." Trial Tr. at 382 (Oct. 25, 2004).  That instruction would have impermissibly violated Parkes's "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."  <u>Gaudin</u>, 515 U.S. at 522-23.  The instruction which the district court delivered properly respected that right, because it allowed the jury to pass

---

[7] Prior to filing, we have circulated this opinion to all active members of this court, and received no objection. <u>See, e.g.</u>, <u>United States v. Crosby</u>, 397 F.3d 103, 105 n.1 (2d Cir. 2005); <u>Jacobson v. Fireman's Fund Ins. Co.</u>, 111 F.3d 261, 268 n.9 (2d Cir. 1997).  We refer to this process as a "mini-en banc."  <u>See</u> <u>Michel v. I.N.S.</u>, 206 F.3d 253, 268 (2d Cir. 2000) (Cabranes, <u>J.</u>, concurring).

upon the Hobbs Act's interstate commerce element: "for a robbery to be punishable under federal law, the government must show that if the robbery occurred, interstate commerce would have been affected in some way[,] even if the effect would have been slight." Trial Tr. at 479 (Oct. 26, 2004).

Since we conclude that the Hobbs Act requires the jury to determine, beyond a reasonable doubt, whether the conduct affected, or would have affected, interstate commerce, we must consider whether the evidence adduced here was sufficient to support that finding.

**B**

The Hobbs Act prohibits robberies that affect interstate commerce "in any way or degree," 18 U.S.C. § 1951(a); so the required showing of an effect on interstate commerce is de minimis. See United States v. Arena, 180 F.3d 380, 389 (2d Cir. 1999); United States v. Silverio, 335 F.3d 183, 186 (2d Cir. 2003) (per curiam); United States v. Augello, 451 F.2d 1167, 1169-70 (2d Cir. 1971). "The jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce. Even a potential or subtle effect on commerce will suffice."

23

United States v. Angelilli, 660 F.2d 23, 35 (2d Cir. 1981) (internal citation omitted); see also United States v. Jones, 30 F.3d 276, 284-85 (2d Cir. 1994) ("Sufficient proof to support a violation of the [Hobbs] Act has been presented if the robbery . . . 'in any way or degree,' affects commerce, even though the effect is not immediate or direct or significant, but instead is postponed, indirect and slight." (quoting 18 U.S.C. § 1951(a))).[8]

The limited evidence adduced at Parkes's trial sufficiently supported the jury's conclusion that the attempted robbery of Medina (described by Parkes as "a local, part-time marijuana dealer,") would have affected interstate commerce.[9] As Beaty testified, Parkes and the others intended to enter the dealer's place of business, "a

---

[8] We have observed that the reach of the Hobbs Act is "coextensive with that of the Commerce Clause of the United States Constitution." United States v. Elias, 285 F.3d 183, 188 (2d Cir. 2002) (citing Stirone v. United States, 361 U.S. 212, 215 (1960); United States v. Leslie, 103 F.3d 1093, 1101 (2d Cir. 1997)). As discussed in text, this means only that a de minimis showing of an effect on interstate commerce is sufficient to satisfy this element; it does not obviate the need for some showing.

[9] Because we conclude that the evidence concerning Medina's marijuana dealing was sufficient to support Parkes's Hobbs Act conviction, we need not address his arguments regarding Delilah Lugo's testimony that Medina also sold cocaine.

24

little room," and rob the inventory and proceeds "spread out on the table"--a small but going enterprise.  Trial Tr. at 265 (Oct. 25, 2004).  The police search of Medina's room yielded one large bag containing marijuana, 58 smaller "nickel bags," and $4,000 in cash.  Moreover, an experienced narcotics investigator testified that marijuana "is almost exclusively trucked into the United States, predominantly through Mexico" and that "[v]ery little" marijuana is grown in New York.[10]  Trial Tr. at 408-16 (Oct. 26, 2004).  (As discussed in Part I.C, <u>infra</u>, reopening to admit this evidence was within the district court's discretion.)  In sum, a reasonable juror, hearing this evidence, could have found that the attempted robbery of Medina's marijuana or proceeds would have affected interstate commerce "in any way or degree."[11]  18 U.S.C. § 1951(a).

---

[10] It may well be that a rational jury <u>could</u> conclude that the interstate commerce element is satisfied by proof that a robbery targeted drugs or proceeds of a drug business that is <u>purely intrastate</u>; but we need not decide that today.

[11] The required evidence of an effect need not take any particular form or be offered in any particular quantum-- direct, indirect, or circumstantial evidence could suffice. It is a case-by-case inquiry.

25

## C

Parkes claims that the district court abused its discretion by granting the government's motion to reopen its case to present the testimony of an investigator regarding the general nature of the drug trade. "[E]ven after a defendant moves under Federal Rule of Criminal Procedure 29 for acquittal, a district judge retains wide discretion to allow the government to re-open its case to correct errors or [if] some other compelling circumstance justifies a reopening and no substantial prejudice will occur." United States v. Leslie, 103 F.3d 1093, 1104 (2d Cir. 1997) (internal quotation marks omitted); cf. United States v. Suarez-Rosario, 237 F.3d 1164, 1167 (9th Cir. 2001) ("One purpose of Rule 29 motions is to alert the court to omitted proof so that, if it so chooses, it can allow the government to submit additional evidence.").

In Leslie, we validated the district court's decision to allow the government to reopen its case in order to establish a nexus with interstate commerce. 103 F.3d at 1104-05. We observed that "the interstate commerce element of a criminal statute is . . . a jurisdictional prerequisite," and held that "a district court may allow the

government to reopen its case to establish this jurisdictional predicate." Id. at 1104.

Here, the district court's decision to change the jury charge, which (according to the government) necessitated additional proof to establish the jurisdictional predicate, was a sufficiently compelling circumstance. Moreover, Parkes was not prejudiced by the presentation of this evidence upon reopening, rather than at some earlier point.

**II**

Parkes asserts that there was insufficient evidence to support Pinkerton liability. The principles that guided our review of Parkes's sufficiency challenge to his Hobbs Act convictions apply here--Parkes bears the heavy burden of demonstrating that no rational trier of fact could have concluded that Parkes bore responsibility for Medina's death under a Pinkerton theory of liability. See United States v. Schwarz, 283 F.3d 76, 105 (2d Cir. 2002).

Under Pinkerton v. United States, 328 U.S. 640 (1946), "a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the offense by a co-conspirator in furtherance of the conspiracy

27

was reasonably foreseeable to the defendant as a consequence of their criminal agreement." Cephas v. Nash, 328 F.3d 98, 101 n.3 (2d Cir. 2003) (citing Pinkerton, 328 U.S. at 646-48). Parkes does not dispute that the murder was committed in furtherance of the conspiracy, so we need consider only whether sufficient evidence supports the jury's conclusion that it was reasonably foreseeable.

An offense by a co-conspirator is deemed to be reasonably foreseeable if it is "a necessary or natural consequence of the unlawful agreement." Pinkerton, 328 U.S. at 648. Parkes claims that Medina's murder was not a necessary or natural consequence of the conspiracy to rob Medina, because the conspirators supposed it to be an "easy" robbery. Trial Tr. at 265 (Oct. 25, 2004). We disagree.

Parkes and the others entered Medina's apartment before dawn, with pistols drawn, and (variously) kicked in doors, rounded up and physically assaulted residents (including placing a plastic bag over the head of one), and bound them with duct tape. The death of a victim is a natural consequence of a robbery which is premised on the use of overmastering force and violent armed confrontation. As the district court observed at sentencing:

28

> [This is] not a situation where a couple of kids run into a store to run out with a toaster or something . . . and then someone loses his temper, picks up something and kills somebody.  This is just not what happened here.  You guys went there armed and ready for trouble, and it happened, and somebody got killed . . . .

Sent'g. Tr. at 32 (Feb. 25, 2005).

Viewing the evidence in the light most favorable to the government and drawing all inferences in the government's favor, we conclude that the evidence was sufficient to support the jury's conclusion that Medina's murder was a natural consequence of the conspiracy to rob him.

### III

Parkes argues that the district court abused its discretion by refusing to grant a new trial based on newly discovered evidence that cooperating witness Duane Beaty took steps to kill another witness before he was enlisted by the government.  Rule 33(a) of the Federal Rules of Criminal Procedure permits the district court to "vacate any judgment and grant a new trial if the interest of justice so requires."  The grant of a Rule 33 motion requires "a real concern that an innocent person may have been convicted."  United States v. Ferguson, 246 F.3d 129, 134 (2d. Cir. 2001)

29

(internal quotation marks omitted).  This Court reviews a district court's denial of a Rule 33 motion only for abuse of discretion.  United States v. Snype, 441 F.3d 119, 140 (2d Cir. 2006).

Although Parkes contends that Beaty perjured himself by not admitting his plot to kill a witness, Parkes does not point to any perjurious testimony.  Cf. United States v. Gambino, 59 F.3d 353, 364-65 (2d Cir. 1995) (finding that omissions and inconsistencies did not necessarily constitute perjury).  As defense counsel stated in summation: "[Beaty] told you almost proudly, it seemed, that in the course of his lifetime he has committed hundreds of crimes." Trial Tr. at 447 (Oct. 26, 2004); Beaty was not asked to enumerate each one, and his failure to do so sua sponte does not constitute perjury.

Parkes argues alternatively that the district court should have granted a new trial on the ground of newly discovered evidence.  A motion for a new trial on the ground of newly discovered evidence is granted "only in the most extraordinary circumstances."  United States v. Spencer, 4 F.3d 115, 118 (2d Cir. 1993) (emphasis in original).  Newly discovered evidence supports the grant of a new trial only

30

if the defendant demonstrates that the evidence could not have been discovered through the exercise of due diligence before or during trial, and that the evidence is "so material and noncumulative that its admission 'would probably lead to an acquittal.'" United States v. Zagari, 111 F.3d 307, 322 (2d Cir. 1997) (quoting United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980)).  "[N]ew impeachment evidence is not material, and thus a new trial is not required 'when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'" United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996) (emphasis in original) (quoting United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995)).

Parkes cannot satisfy this exacting standard: (i) the evidence regarding Beaty's plotting is additional impeachment; (ii) according to Parkes, "Beaty's unreliability was the central thrust of the defense summation"; (iii) the new evidence does not concern the central question of Parkes's involvement in the attempted robbery and murder; and (iv) there was ample corroborating evidence of Parkes's involvement independent of Beaty's

31

testimony.  In short, Parkes is unable to demonstrate that the jury's consideration of evidence of Beaty's plotting "would probably [have led] to an acquittal."  Alessi, 638 F.2d at 479.

**IV**

Parkes impugns the prosecutor's statements in summation that "[d]rug dealing affects interstate commerce" and that "robberies that seek drugs and drug money do so as well." Trial Tr. at 439-40 (Oct. 25, 2004).  According to Parkes, these arguments constituted an improper attempt to misstate the law to the jury.

As the district court observed, these statements were (at the very least) arguably not inappropriate.  The cold record doesn't permit an assessment as to whether the statements were intended as a misstatement of law (as Parkes argues), or a permissible argument of fact (as the district court found).  See Trial Tr. at 443 (Oct. 26, 2004) (denying Parkes's motion for a mistrial based on the prosecutor's statements and observing "I only heard a factual assertion").  But even if they were inappropriate, the statements would not warrant reversal.

32

"To warrant reversal, the prosecutorial misconduct must cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002) (internal quotation marks omitted). In assessing the alleged misconduct, we consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." United States v. Melendez, 57 F.3d 238, 241 (2d Cir. 1995).

These challenged statements were isolated. "[I]solated remarks are ordinarily insufficient [to warrant reversal]." Elias, 285 F.3d at 191. Defense counsel had adequate opportunity in his summation to dispute the government's assertions, and took it, arguing that the prosecutor "flatly misstated the law to you," and that "[t]here has to be pro[of] that the drug dealing in this case affects interstate commerce. And there was no such proof." Trial Tr. at 454-56 (Oct. 26, 2004). In any event, the judge's instructions to the jury--that it was for the jury to determine whether the attempted robbery affected interstate commerce--cured any possible prejudice. And even further

33

assuming, arguendo, that the prosecutor's remarks were both improper and uncured, they would not have "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." Elias, 285 F.3d at 190 (internal quotation marks omitted).

**V**

The government has brought to our attention two errors in the district court's calculation of Parkes's sentence. First, the statutory maximum term of imprisonment for conviction of 18 U.S.C. § 922(g) (felon-in-possession of a firearm) is ten years, not the twenty years to which the district court sentenced Parkes. See 18 U.S.C. § 924(a)(2); United States v. Riley, 452 F.3d 160, 164 (2d Cir. 2006) (observing that "the statutory maximum prison term for violation of § 922(g)(1) was 120 months"). Second, because 18 U.S.C. § 924(c) is a lesser included offense of 18 U.S.C. § 924(i)(1), the district court erred by imposing sentences on both. See, e.g., Rutledge v. United States, 517 U.S. 292, 306-07 (1996). Consequentially, we vacate the sentence and remand for re-sentencing.

\*   \*   \*

34

In light of the foregoing, we affirm the conviction but remand for re-sentencing.