SUMMARY ORDER
Defendant-appellant Raheen Davis appeals from a judgment of conviction entered on July 15, 2008, following a two-week jury trial in the Southern District of New York (Kaplan, J.) for conspiracy to commit a Hobbs Act robbery and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 1951, 924(c)(1)(A)(iii). Evidence presented at trial showed that Davis, Rigoberto Ramos and Lafonso Mitchell conspired to rob Henry King, a small-time marijuana dealer who sold drugs out of his Manhattan apartment. Davis, Mitchell, and co-conspirator Otis Austin forced their way into King’s apartment and robbed him at gunpoint of $500 worth of marijuana and an indeterminate amount of money. Davis then shot King, his common-law wife and *702 her son. Henry King was killed. We assume the parties’ familiarity with the facts and procedural history of this case.
On appeal, Davis asserts principally that the evidence presented at trial was insufficient for a jury to find beyond .a reasonable doubt that the robbery of King had any effect on interstate commerce, and therefore, failed to satisfy the jurisdictional element of a Hobbs Act violation.
“A defendant challenging the sufficiency of the evidence bears a heavy burden.... ” United States v. Pipola, 83 F.3d 556, 564 (2d Cir.1996). On a sufficiency challenge, “we view the evidence in the light most favorable to the government, drawing all inferences in the government’s favor and deferring to the jury’s assessments of the witnesses’ credibility.” United States v. Arena, 180 F.3d 380, 391 (2d Cir.1999) (internal quotation marks omitted). We will sustain the jury’s verdict so long as “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).
Under the Hobbs Act, it is illegal to “obstruct[ ], delay[ ], or affeet[ ] commerce or the movement of any article or commodity in commerce,” “in any way or degree” “by robbery or extortion or attempt[ing] or eonspir[ing] to do so.” 18 U.S.C. § 1951(a). The government’s burden of proving a nexus to interstate commerce is “minimal,” United States v. Elias, 285 F.3d 183, 188 (2d Cir.2002), and even a de minimis showing is sufficient, United States v. Parkes, 497 F.3d 220, 230 (2d Cir.2007). In a prosecution for Hobbs Act conspiracy, “all that need be shown is the possibility or potential of an effect on interstate commerce, not an actual effect.” United States v. Jones, 30 F.3d 276, 285 (2d Cir.1994). Moreover, “[t]he required evidence of [such] an effect need not take any pai'ticular form or be offered in any particular quantum — direct, indirect, or circumstantial evidence could suffice.” Parkes, 497 F.3d at 231 n. 11.
The evidence presented at trial that related to the robbery’s effect on interstate commerce included: (1) coconspirator Mitchell’s testimony that Ramos suggested that Davis and Mitchell rob Henry King of his “money and weed”; (2) coconspirator Mitchell’s testimony that he had previously purchased marijuana from Henry King and that he told Davis that King “got some Arizona weed or something”; (3) Mitchell’s testimony that Davis had said about King’s marijuana something to the effect of “let’s go get it”; (4) Mitchell’s testimony that he, Ramos and Davis robbed King of approximately 100 “[n]ickel ba[g]s” of marijuana and that the bags bore the same emblem as the marijuana he had previously purchased from King; (5) the expert testimony of DEA Agent Craig Phildius, that in his experience, “the vast majority of marijuana that gets into this country is from outside of our own borders”; (6) Phildius’s testimony that in the roughly fifty eases he has worked on involving marijuana dealers in New York City, “[e]very one” has involved marijuana that was grown outside of New York State; (7) the testimony of Mercy Ramos, who bought marijuana from Henry King “[a]ll the time,” including the day he was murdered, that King sold “Ari” ie., “Arizona” marijuana; and (8) Agent Phildius’s testimony that he is familiar with the term “Arizona” and that in connection with marijuana it means “that particular bunch of marijuana came from the State of Arizona” or passed through Arizona, likely on its way from Mexico.
During his testimony Agent Phildius conceded that: (1) marijuana can be grown indoors and that there have been seizures of marijuana grown in New York State; (2) the New York City marijuana cases he *703 has worked on “are all primarily large-scale marijuana cases in which the organization is dealing in hundreds of pounds and in some cases thousands of pounds of marijuana”; and (3) he has no personal knowledge about where Henry King obtained his marijuana.
In United States v. Parkes, 497 F.3d 220 (2d Cir.2007), we affirmed a conviction under the Hobbs Act because the “limited evidence,” id. at 226, adduced at trial was sufficient to show that defendant’s attempted robbery of a “local, part-time marijuana dealer,” id., would have affected interstate commerce:
As [a co-conspirator in the attempted robbery] testified, Parkes and the others intended to enter the dealer’s place of business, “a little room,” and rob the inventory and proceeds “spread out on the table”-a small but going enterprise. The police search of [the dealer’s] room yielded one large bag containing marijuana, 58 smaller “nickel bags,” and $4,000 in cash. Moreover, an experienced narcotics investigator testified that marijuana “is almost exclusively trucked into the United States, predominantly through Mexico” and that “[v]ery little” marijuana is grown in New York. In sum, a reasonable juror, hearing this evidence, could have found that the attempted robbery of [the dealer’s] marijuana or proceeds would have affected interstate commerce “in any way or degree.” 18 U.S.C. § 1951(a).
Id. at 231 (citations, footnotes and parenthetical explanation omitted).
On appeal, the government urges us to apply our holding in Parkes to the facts here, while Davis argues that Parkes is distinguishable. In Parkes, the expert told the jury that marijuana comes “almost exclusively” from abroad, whereas here the expert testified that the “vast majority” of marijuana comes from abroad. And in Parkes, the police recovered $4,000 in cash and a “large bag” of marijuana, whereas here, the conspirators robbed King of what appears to be a smaller quantity of drugs and an unknown amount of money.
The expert testimony in this trial about the sources of New York City marijuana was tantamount to that in Parkes, and the physical evidence was consistent with a small drug operation. This evidence, combined with the additional testimony, not present in Parkes, about “Arizona” marijuana is enough for a rational juror to find that the drugs either moved in interstate commerce or were part of a business enterprise engaged in interstate commerce. Viewed in the light most favorable to the government, therefore, the evidence was sufficient for a jury to find beyond a reasonable doubt that King’s drug dealing venture was involved in interstate commerce, and hence that the conspiracy to rob King of his drugs and profits had at least a potential effect, even if de minimis, on interstate commerce. See id. at 230-31.
Davis contends that the trial court should have stricken all of Ramos’s testimony about Arizona weed and that the court limited all of Mitchell’s testimony about Arizona weed so that the jury was not allowed to consider it for its truth. The government counters that even without those witnesses’ mentions of “Arizona,” the evidence would be sufficient to establish the requisite connection with interstate commerce. We see no abuse of discretion in the district court’s evidentiary rulings in admitting Ramos or Mitchell’s testimony. Although somewhat similar testimony by Mitchell had been admitted only on a limited basis, with the jury instructed that it could not consider it for the truth of whether the marijuana came from Arizona, the only objection made in connection with the testimony given by *704 Mitchell at Tr. 249 was to the relevance of the question “When you [Mitchell] and he [Davis] were looking to get the weed and you told him about Henry King, can you remember what it is you said to him and what he said to you?” The relevance objection was overruled; and there was no objection on any other ground and no objection to Mitchell’s ensuing testimony that he had told Davis that King “got some Arizona weed or something.” Since the Ramos and Mitchell evidence was available to the jury we need not reach the government’s contention that the expert testimony of the DEA agent alone was sufficient to establish a de minimis effect on interstate commerce. Although we are skeptical that the agent’s testimony, by itself, would have been sufficient, that sufficiency question is best left for a case that squarely presents it.
Davis relies upon United States v. Peterson, 236 F.3d 848 (7th Cir.2001), in which the Seventh Circuit reversed a Hobbs Act robbery conviction on the ground that a DEA agent’s expert testimony that “formally” bricks of marijuana do not originate in Indiana, rather they “would be” coming from out of state, was insufficient proof of an interstate nexus. Id. at 853-55. We think these statements are significantly more equivocal than the expert testimony in this case.
Davis also argues that this Court should adopt a “substantial effect” test for interstate commerce under the Hobbs Act, rather than the de minimis standard that is the law of this Circuit. See Parkes, 497 F.3d at 230. Given that the Hobbs Act prohibits the specified conduct if it affects commerce “in any way or degree,” 18 U.S.C. § 1951(a) (emphasis added), we see no reason to alter this standard, see United States v. Elias, 285 F.3d 183, 188 (2d Cir.2002), and even if we did, such a change is beyond the powers of this panel, see BankBoston, N.A. v. Sokolowski (In re Sokolowski), 205 F.3d 532, 534-35 (2d Cir.2000) (noting that this Court is “bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court en banc” (internal quotations omitted)).
For the foregoing reasons, the judgment of the United States District Court for the Southern District of New York is AFFIRMED.