06-2680-cr
*United States v. Iodice*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2007

(Argued: April 28, 2008

Decided: May 6, 2008
Amended: May 8, 2008)

Docket No. 06-2680-cr

————————

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

JOHN IODICE,

*Defendant-Appellant.*

————————

B e f o r e :

STRAUB, POOLER and SOTOMAYOR, *Circuit Judges*.

————————

Appeal from judgment of conviction and sentence entered in the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge*), the defendant having been convicted of two counts of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371, two counts of mail fraud in violation of 18 U.S.C. § 1341, one count of using fire to commit a felony in violation of 18 U.S.C. § 844(h)(1), one count of making a false statement to law enforcement in violation of 18 U.S.C. §§ 1001(a)(1), (2), one count of conspiracy to obstruct

1

commerce by robbery in violation of 18 U.S.C. § 1951(a), and one count of conspiracy to commit arson in violation of 18 U.S.C. §§ 844(i), (n). The defendant was principally sentenced to 180 months' imprisonment.

On appeal, the defendant argues that (1) the District Court erred in denying his motion for a judgment of acquittal based on insufficient evidence for conviction on the arson conspiracy charge, (2) the District Court erred — in ruling on the defendant's motion to suppress evidence — by crediting the special agent's account of the defendant's arrest, and (3) he received constitutionally ineffective assistance of counsel at trial. We find the first two asserted grounds to be without merit and decline to decide the third ground at this time.

Affirmed.

_____

JOSEPH J. FERRANTE, Islandia, New York, *for Defendant-Appellant.*

LARA TREINIS GATZ, Assistant United States Attorney (David C. James, Assistant United States Attorney, *of counsel*, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, *on the brief*), Brooklyn, New York, *for Appellee.*

_____

STRAUB, Circuit Judge:

Defendant-Appellant John Iodice appeals from the judgment of the District Court for the Eastern District of New York (Leonard D. Wexler, *Judge*), entered on June 5, 2006, convicting him after a jury trial of various counts related to three arsons and the robbery of a money courier, and sentencing him principally to 180 months' imprisonment and three years' supervised release. On appeal, he makes three arguments. First, Iodice argues that the federal arson statute, 18 U.S.C. § 844(i), is unconstitutional as applied to the arson of a diner that had been unused for approximately two years at the time of the fire. Second, he contends that the District Court erred in finding credible the arresting agent's account of a warrantless search and therefore erred in denying Iodice's motion to suppress evidence gained as a result of that search. Finally, Iodice claims that his trial counsel made errors that deprived him of the constitutionally required effective assistance of counsel. For the reasons that follow, we affirm the judgment of the District Court.

2

# I. RELEVANT BACKGROUND

Iodice was convicted of multiple crimes related to three arson fires and the robbery of a money courier. Specifically, Iodice set fire to his girlfriend's home on February 7, 1999. Iodice then directed her to submit fraudulent insurance claims and to receive and cash the resulting settlement checks. In September 2000, Iodice and three co-conspirators set fire to a boat on the high seas. Iodice had previously arranged for the boat to be insured at an inflated value, and he eventually received approximately $45,000 of the insurance proceeds. During the course of an investigation into the boat fire, Iodice gave false statements to an FBI agent. On December 3, 1999, Iodice and his co-conspirators robbed a money courier in Glen Cove, New York of approximately $100,000. Finally, on October 13, 2001, Iodice and a co-conspirator set fire to a vacant diner in an attempt to prevent it from opening, as planned, in the spring of 2002.

On April 17, 2002, Iodice was arrested by FBI Special Agent James McCarthy. At the time, Iodice was carrying a plastic shopping bag containing the following incriminating evidence: (1) documents relating to the insurance of the boat, (2) a *Newsday* article about the boat fire, (3) four loose .38 caliber rounds, (4) a calendar card listing locations for Sunrise Check Cashing, and (5) Iodice's address book.

On May 19, 2004, the District Court held a hearing to hear testimony pertaining to a motion by Iodice to suppress this evidence. At the hearing, Iodice's counsel argued that McCarthy was not a credible witness to testify about the events surrounding Iodice's arrest because McCarthy had given substantially inconsistent accounts of those events on different occasions. The District Court denied Iodice's motion to suppress evidence without further elaboration.

At trial, the government called Lambros Rakkas, the owner of the diner burned by Iodice and a co-conspirator, to provide evidence on its use in interstate commerce. He testified that the restaurant was a Paramount Diner, a movable diner which was "complete and ready to open" when he purchased it in 1999. Rakkas further testified that he did not decide to move the diner to a new location until approximately one and a half years after its purchase. The "projected opening" of the diner was April 2002, but Rakkas did not explain what, if any, specific steps he had taken toward that end prior to the arson. Regardless of the extent of Rakkas's pre-October 2001 efforts to relocate and open the diner, Richard Cuzzi, Iodice's co-conspirator in the arson, testified that Iodice had been contacted by the "Greek Mafia" to destroy the diner in order to prevent competition with another diner already located near the new location.

The jury found Iodice guilty of two counts of mail fraud, two counts of conspiracy to commit mail fraud, one count of using fire to commit felonies, one count of making a false statement to the FBI, one count of conspiracy to obstruct commerce by robbery, and one count of conspiracy to commit arson. Iodice was acquitted of one count of mail fraud, one count of using fire to commit felonies, one count of using and carrying a firearm in furtherance of a crime, one count of obstructing commerce by robbery, and one count of arson. The jury was deadlocked on one count of arson within the special maritime jurisdiction of the United States. Finally, the government successfully moved to dismiss one count of being a felon in possession of ammunition. Iodice was principally sentenced to 180 months' imprisonment.

**II. DISCUSSION**

On appeal, Iodice argues that (1) the federal arson statute is unconstitutional as applied to the arson of a closed diner, (2) that the District Court erred in denying his suppression motion, and (3) that he received constitutionally ineffective assistance of counsel. We find the first two arguments to be without merit and decline to consider the third claim on direct review, instead preserving it for a § 2255 petition.

*A.      Interstate Nexus Requirement of 18 U.S.C. § 844(i)*

Iodice's challenges the jury's finding, beyond a reasonable doubt, that Rakkas's diner was "[a] building . . . used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). Although Iodice explicitly argues that the statute is unconstitutional as applied to the arson of the structure at issue in this case, he also appears to challenge the sufficiency of the evidence presented to the jury regarding the interstate nexus requirement of § 844(i). For purposes of this appeal, we assume that Iodice intends to make both challenges to his § 844(i) conviction.

We first address any argument regarding the sufficiency of the evidence related to the § 844(i) conviction. A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial "bears a heavy burden." *United States v. Parkes*, 497 F.3d 220, 225 (2d Cir. 2007) (internal quotation marks omitted), *cert. denied*, 128 S. Ct. 1320 (2008). On such a challenge, "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *Id.* We will sustain the jury's verdict "so long as any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Id*. (internal quotation marks omitted).[1]

As noted above, section 844(i) requires that the object of the arson be a building "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). For the purpose of this statute, the Supreme Court has interpreted the phrase "used in" to "mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Jones v. United States*, 529 U.S. 848, 855 (2000). Moreover, the Supreme Court has instructed that the "proper inquiry" for a court presented with a § 844(i) charge is first to determine "the function of the building itself, and then [to determine] whether that function affects interstate commerce." *Id*. at 854. Applying this guidance, we have held that both restaurants and bars have the requisite relationship to interstate commerce under § 844(i). *See United States v. Joyner*, 201 F.3d 61, 79 (2d Cir. 2000) (extending the *per se* rule that § 844(i) covers rental properties, as established in *Russell v. United States*, 471 U.S. 858, 862 (1985)).[2]

---

[1] The government contends that we should apply "plain error" review to Iodice's sufficiency challenge because of his purported failure to raise this objection in the District Court. *See United States v. Carter*, 489 F.3d 528, 537 (2d Cir. 2007) (describing plain error review for unpreserved claims), *cert. denied*, 128 S. Ct. 1066 (2008). However, Iodice's trial counsel explicitly placed an objection on the record that "the government [had] failed to meet the burden of establishing all of the elements" of the relevant count, and this objection was summarily denied by the District Court. Iodice therefore sufficiently preserved this objection for appellate review.

[2] Although *Joyner* was decided before *Jones*, we have rejected the argument that *Jones* implicitly overruled *Russell* and its *per se* treatment of rental properties. *See United States v. Logan*, 419 F.3d 172, 181 (2005). As the reasoning of *Logan* applies with equal force to restaurants and bars as it does to rental properties, we see no reason today to disturb the holding of *Joyner*. At least one of our sister circuits has reached the same conclusion. *See United States v. Soy*, 413 F.3d 594, 603–04 (7th Cir. 2006) (noting the continuing validity of *Joyner* after

Iodice does not contend that Rakkas's diner was permanently unfit to be used as a business which might affect interstate or foreign commerce. Rather, he argues that, at the time of the arson, the diner was nothing but a vacant building serving no function that might conceivably affect interstate or foreign commerce because it had been closed for at least one and a half years and would presumably have continued to be closed for at least an additional six months. In Iodice's view, such a building may not be considered one "used in" interstate commerce because the Supreme Court has required "active employment" in interstate commerce at the time of the arson. *See Jones*, 529 U.S. at 855.

We have observed that "it is always hazardous to seize upon a single word or phrase in a judicial opinion and build upon it a rule that was not in issue in the case being decided." *Howard v. Senkowski*, 986 F.2d 24, 28 (2d Cir. 1993). In that vein, we note that *Jones* concluded only that § 844(i) did not cover a private, owner-occupied, residential dwelling that served no commercial purpose whatsoever. 529 U.S. at 854. In doing so, the Court rejected the argument that the structure was "used in" interstate commerce merely due to its receipt of interstate goods like energy and its role in the owner's procurement of insurance and financing. *See id*. at 855. However, the Court did not confront and thus did not address those circumstances that serve to remove a *commercial* building that would otherwise be covered by § 844(i), but is temporarily inoperative, from the protection of that statute. To the extent that Iodice now urges us to adopt an overly literal reading of the "active employment" phrase in *Jones*, we refuse to do so.

---

*Jones*); *Martin v. United States*, 333 F.3d 819, 821 (7th Cir. 2003) ("It remains true after *Jones* that buildings actively used for a commercial purpose, including restaurants, . . . possess the requisite nexus with interstate commerce under § 844(i)."), *cert. denied*, 540 U.S. 1083 (2003).

Our sister circuits have concluded that § 844(i) applies to temporarily vacant buildings as long as there was evidence at trial of sufficiently definite plans to return the property to the stream of commerce.  For example, in *Martin v. United States*, 333 F.3d 819 (7th Cir. 2003), *cert. denied*, 540 U.S. 1083 (2003), the defendant argued that the arson he committed of one of his apartment buildings did not satisfy the interstate commerce nexus requirement of § 844(i) because the building was "temporarily unoccupied and partially boarded up" at the time of the fire.  *Id.* at 820.  The Seventh Circuit rejected that argument on the ground that the evidence did not support the defendant's claim that he had "no intention of reletting the apartments in his building."  *Id*. at 821.  Specifically, the defendant had received his last rent check from his previous tenant only two months prior to the arson, had made significant efforts to improve the condition of the apartments and protect against vandalism, and had insured the building as a rental property for the period running from its purchase until the fire.  *Id*. at 821–22.  As a result, the Seventh Circuit affirmed the defendant's conviction under § 844(i) and stated that "the temporary suspension of commercial activity in a building that otherwise meets the interstate commerce requirements of § 844(i) does not permanently remove that building from the scope of the arson statute."  *Id.*

The Third Circuit concluded likewise in *United States v. Williams*, 299 F.3d 250 (3d Cir. 2002), *cert. denied*, 537 U.S. 1065 (2002), where the defendant had been convicted under § 844(i) of arson of a commercial building that he had purchased several months previously.  *Id*. at 252.  For six months, the defendant had advertised the availability of the building for lease and had shown the property to several tenants.  *Id*. at 252–53.  The defendant finally leased the building to a tenant on the day before the arson.  *Id*. at 253.  In rejecting the defendant's

8

argument that he had "permanently removed" the building from interstate commerce and thus beyond the reach of § 844(i), the Third Circuit concluded that, based on the evidence in the record, "a reasonable trier of the facts could have concluded that Williams intended the building, at the very least, to return to the stream of commerce." *Id*. at 255. *See also United States v. Estate of Parsons*, 314 F.3d 745, 751–752 (5th Cir. 2002) (holding that the fact that defendant had closed his hotel for the winter did not permanently remove the building from interstate commerce for purposes of § 844(i)), *vacated on other grounds*, 267 F.3d 409 (5th Cir. 2004) (en banc). In doing so, the Third Circuit distinguished the pre-*Jones* decision of *United States v. Gaydos*, 108 F.3d 505 (3d Cir. 1997), where the Third Circuit reversed a defendant's conviction under § 844(i) on the ground that no evidence in the record showed any intention on the part of the defendant to return the rental property she owned and burned down to interstate commerce. *Id*. at 510–11.

The foregoing suggests that commercial buildings — specifically, restaurants and rental properties — do not necessarily relinquish their relationship with interstate commerce for purposes of § 844(i) due merely to the fact that they are temporarily vacant. Here, the record contains evidence of Rakkas's plans and arrangements to relocate and open the then-vacant diner. In particular, Rakkas testified before the jury that his diner was "complete and ready to open" in October 2001 and that he had plans to do so in a specific month and at a specific location. In addition, Cuzzi testified that they had been hired to burn the diner to prevent it from competing with an existing diner at the new location. This testimony corroborates Rakkas's account of his pre-arson plans regarding the diner, and it demonstrates that Rakkas did not keep silent about his plans with his diner. To the contrary, potential competitors apparently knew

9

about those plans and considered them serious enough to warrant the hiring of Iodice and Cuzzi in order to thwart those plans.

We recognize that § 844(i) must have some outer bounds such that it does not cover every vacant building that may someday be brought into the stream of commerce, or every building whose owner desires someday to bring it into the stream of commerce. We need not decide here the contours of those bounds, however, because the record contains ample evidence of the owner's active preparation to bring the diner into the stream of commerce, which is more than sufficient to satisfy the interstate nexus requirement. Accordingly, viewing the evidence in the light most favorable to the government and drawing all inferences in the government's favor, as we must do, we find that there was sufficient evidence to support the jury's finding of the interstate nexus in this case. *See Parkes*, 497 F.3d at 220.

Having concluded that 18 U.S.C. 844(i) covers the building at issue in this case, we must next determine whether that statute exceeds the limits of Congressional authority as provided by the Commerce Clause of the Constitution. Iodice argues that the Commerce Clause requires nothing less than a "substantial relation[ship]" between the building and interstate commerce. However, we have previously rejected precisely this argument. *See Logan*, 419 F.3d at 180. Iodice's constitutional challenge to § 844(i) is thus foreclosed by the reasoning of *Logan*.

In sum, Iodice's first asserted ground in this appeal fails whether it is considered a challenge to the sufficiency of the evidence or a constitutional "as applied" challenge.

*B.  Credibility Determination at Suppression Hearing*

Iodice's second argument on appeal is that FBI Special Agent James McCarthy's testimony at the suppression hearing was not credible, and that the District Court therefore erred in relying upon this testimony in making its determination that the evidence was admissible. We review the factual findings of a district court for clear error. *See United States v. Rommy*, 506 F.3d 108, 128 (2d Cir. 2007), *cert. denied*, 2008 WL 355212 (U.S. Mar. 17, 2008). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Sash*, 396 F.3d 515, 521 (2d Cir. 2005). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*. When, as here, credibility determinations are at issue, we give particularly strong deference to a district court finding. *See United States v. Gaines*, 457 F.3d 238, 243 (2d Cir. 2006).

Iodice focuses on three purported inconsistencies in McCarthy's various accounts of the events surrounding Iodice's arrest. First, in his affidavit dated April 17, 2002, accompanying his application for a warrant to search Iodice's home, McCarthy characterized his search of the contents of the bag Iodice was carrying when arrested as a search incident to arrest. However, McCarthy did not specify precisely when or where he conducted this search. In his affidavit submitted to the District Court at the suppression hearing, McCarthy stated that he conducted a "standard inventory" search of the contents of the bag back at the FBI office after Iodice had been arrested. Second, McCarthy described Iodice walking from his house to his van when he was arrested in the first affidavit, but, in the second affidavit, he described Iodice standing next to the van in the second affidavit. Finally, McCarthy did not mention until his suppression

11

hearing affidavit that Iodice, upon being arrested, had asked McCarthy to give him a pill from the medicine bottle in the bag.

The different details identified by Iodice do not appear to be inconsistent with each other, and to the extent that one views them as such, the District Court did not commit clear error in nonetheless crediting McCarthy's testimony. Indeed, we have held that seemingly inconsistent testimony need not render a witness not credible. *See Mathie v. Fries*, 121 F.3d 808, 811–12 (2d Cir. 1997) (accepting district court's credibility finding despite inconsistencies in witness's testimony). Here, McCarthy appears to have simply provided different levels of detail regarding his recollection of the events of April 17, 2002. Therefore, we reject Iodice's challenge to the judgment of the District Court on this ground.

*C.     Ineffective Assistance of Counsel*

Finally, Iodice alleges that his trial counsel made numerous errors, which deprived him of effective assistance of counsel. On this claim, we "may do one of three things: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000). Despite these options, we generally decline to "resolv[e] ineffectiveness claims on direct review" and instead leave consideration of the claims for a subsequent habeas petition. *United States v. Williams*, 205 F.3d 23, 35 (2d Cir. 2000), *cert. denied*, 540 U.S. 912 (2003); *see also United States v. Khedr*, 343 F.3d 96, 99–100 (2d Cir. 2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance."). Both parties

acknowledge there is insufficient evidence in the record for consideration of this claim, and suggest that it would be best left for habeas review. We agree, and therefore decline to consider this claim without prejudice to Iodice's ability to raise it in a § 2255 petition.

**III. CONCLUSION**

We have considered all of Iodice's arguments and have found them to be without merit. For the foregoing reasons, we AFFIRM the judgment of the District Court.