13-3063-cr
*United States v. Truman*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of September, two thousand fourteen.

PRESENT:    DEBRA ANN LIVINGSTON,
            CHRISTOPHER F. DRONEY,
                                *Circuit Judges*,
            ALISON J. NATHAN,*
                                *District Judge*.

_____

UNITED STATES OF AMERICA,

                *Appellee,*

    -v-                                                    No. 13-3063-cr

JEFFREY E. TRUMAN, SR.,

                *Defendant-Appellant.*

_____

                                RAJIT DOSANJH (Edward R. Broton and
                                Gwendolyne E. Carroll, *on the brief*), Assistant
                                United States Attorney, Of Counsel, *for* Richard

_____

* The Honorable Alison J. Nathan, of the United States District Court for the Southern District of New York, sitting by designation.

Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

LISA A. PEEBLES, Federal Public Defender (JAMES P. EGAN, Research & Writing Attorney, *on the brief*), Syracuse, NY, *for Defendant-Appellant*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Jeffrey E. Truman, Sr. ("Truman") appeals from a judgment of the United States District Court for the Northern District of New York (Mordue, *S.J.*), entered August 9, 2013. Truman was convicted, after a jury trial, of one count of aiding and abetting arson, in violation of 18 U.S.C. § 844(i); two counts of mail fraud, in violation of 18 U.S.C. § 1341; and one count of using a fire to commit a felony, in violation of 18 U.S.C. § 844(h). After the jury verdict, the district court granted Truman's motion for a judgment of acquittal under Rule 29(c) and conditionally granted Truman's motion for a new trial under Rules 29(d) and 33(a). The Government appealed, and this Court vacated the district court's judgment of acquittal and conditional grant of a new trial, remanding with instructions to reinstate the jury's verdict. On remand, the district court entered a judgment of conviction and sentenced Truman principally to a 217-month term of imprisonment. On appeal, Truman challenges the sufficiency of the evidence supporting his conviction, claims that the jury verdict was tainted by prosecutorial misconduct, and challenges the procedural and substantive reasonableness of his sentence.[1] We assume the parties' familiarity with the facts of the case and the issues presented for appellate review.

---

[1] The Government argues that our review of Truman's sufficiency and prosecutorial misconduct claims is limited by the "law of the case" doctrine. Because we hold that Truman's claims fail even assuming, *arguendo*, that the law of the case doctrine is inapplicable here, we need not and do not express any view as to its applicability in these circumstances.

I.

"A defendant challenging the sufficiency of the evidence . . . bears a heavy burden because we must uphold the judgment of conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vilar*, 729 F.3d 62, 91 (2d Cir. 2013) (internal quotation marks, citation, and alteration omitted). As relevant here, a defendant may only be convicted of arson under 18 U.S.C. § 844(i) if the property that he destroys by fire is "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *United States v. Iodice*, 525 F.3d 179, 182 (2d Cir. 2008) (internal quotation marks omitted) (describing "interstate nexus requirement"). The mail fraud statute, 18 U.S.C. § 1341, requires proof of a similar element: that a scheme to defraud be carried out through the use of the Postal Service or "any private or commercial interstate carrier." Truman challenges his arson conviction on the ground that the evidence was insufficient to prove beyond a reasonable doubt that the property was used in interstate commerce. Truman challenges his mail fraud convictions on the ground that the evidence was insufficient to prove that he could reasonably have foreseen that the relevant insurance documents would be sent by mail or a commercial interstate carrier.[2] We conclude that the evidence was sufficient as to all counts.

A. *Interstate Nexus*

The Supreme Court has interpreted § 844(i)'s requirement that a building be "used in interstate or foreign commerce" to mean "active employment for commercial purposes, and not

_____

[2] The Government argues that Truman has waived this sufficiency challenge as to the mail fraud counts because he failed to raise it in his Rule 29 motion in the district court. *United States v. Delano*, 55 F.3d 720, 726 (2d Cir. 1995) (holding that criminal defendant who raised specific specific sufficiency arguments in his Rule 29 motion forfeited all other sufficiency challenges on appeal). We need not address this issue, however, as the argument fails on the merits.

merely a passive, passing, or past connection to commerce." *Jones v. United States*, 529 U.S. 848, 855 (2000). We applied that standard in *United States v. Iodice*, in which the defendant burned down the victim's diner six months before it was scheduled to open. 525 F.3d at 182-85. The defendant argued that "at the time of the arson, the diner was nothing but a vacant building serving no function that might conceivably affect interstate or foreign commerce." *Id.* at 183. This Court disagreed, holding that a building satisfies the active employment standard as long as there are "sufficiently definite plans to return the property to the stream of commerce," based on evidence of the owner's "plans and arrangements" and "active preparation" to return the building to commercial use. *Id.* at 184-85.

At trial, the Government presented invoices and testimony showing that JMM, LLC ("JMM"), the business in which Truman was a partner, had invested heavily in renovating the property at 270 Liberty Street in order to return it to commercial use, and had engaged a realtor for the purpose of doing so as soon as possible. Additionally, that realtor testified that, at the time of the arson, the first floor of the Liberty property was ready for tenants to move in, and that he had showed the property to potential tenants throughout the year preceding the fire. Because the government presented ample evidence that JMM had undertaken exhaustive "active preparation" to return the property to the stream of commerce, and had made "plans and arrangements" indicating JMM's present intent to put the building to commercial use, a rational trier of fact could have found that the building was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" within the meaning of § 844(i) and our precedents. Truman's argument to the contrary is without merit.

B.    *Mail Fraud*

Under 18 U.S.C. § 1341, the second element of a mail fraud offense requires that the Government prove that the defendant caused a mailing in furtherance of the fraud.  To satisfy the causation element, the Government need only prove that the defendant "could reasonably have foreseen that [a] third-party would use the mail in the ordinary course of business as a result of defendant['s] act." *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989).  Truman argues that he could not reasonably have foreseen that JMM's insurance adjuster, Richard Smith, would submit JMM's claim forms via an interstate carrier. For the following reasons, we disagree.

The mailings charged in Counts 2 and 3 consist of the sending of the insurance claim packet from Smith to Erie's attorney, located in Buffalo, New York, and to Erie's adjuster, located in Mechanicsburg, Pennsylvania. Smith testified that such mailings are a standard practice. "The courts, when construing the mail fraud statute in the context of schemes to defraud an insurance company, have consistently held that defendants 'caused' mailings that are part of the ordinary claims process." *Bortnovsky*, 879 F.2d at 38. Here, the entire purpose for which JMM secured Smith's services was to assemble and submit the claim documents to the insurer. The form which Truman signed to this end was, by its terms, directed to an insurance company based in another state. A jury was entitled to conclude from this evidence that Truman could reasonably have foreseen that Smith would submit the claim documents via an interstate carrier. Thus, Truman's sufficiency challenge fails.

## II.

"In evaluating whether allegedly improper comments by the prosecutor are grounds for reversal, the fundamental question is whether, if there was misconduct, it caused substantial

5

prejudice to the defendant, thereby depriving him of his right to a fair trial." *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991). A defendant asserting that a prosecutor's remarks warrant reversal "face[s] a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of [his] right to a fair trial." *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993). Where, as here, a defendant raises objections to the content of a prosecutor's summation for the first time on appeal, we review for plain error, "requiring us to reject any assignment of error that does not amount to flagrant abuse . . . ." *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012).

This Court in its previous decision determined that the prosecutor posed improper questions to Truman on cross examination and also erred, *inter alia*, by informing the jury during summation that Truman, Jr.'s cooperation agreement had been voided because he refused to testify against his father. We concluded, however, that these errors, when viewed in the context of the entire proceeding, were not so severe as to deprive Truman of a fair trial. On this second appeal, Truman now points to a litany of additional alleged infirmities in the prosecutor's summation – matters not objected to at trial – to argue that when considered cumulatively with the errors already pressed, his due process rights were violated. As already indicated, we need not decide whether the law of the case doctrine permits such a claim to be asserted at this juncture because assuming, *arguendo*, that it is properly before us, the prosecutor's conduct, considered as a whole, did not result in "a proceeding dominated by passion and prejudice." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) (internal quotation mark omitted).

Truman relies principally on misstatements of the record in summation: that Truman, Jr. testified, according to the prosecutor, that "he went into the woods and cried" after lighting the fire, when in fact he testified only that he was shook up by the explosion and required about half an hour

6

"to regain [his] composure"; that Truman, Jr. testified in state court, similarly to Carrie Dailey's testimony before the jury, that his father told him that the defendant would make sure that his son would "be all set" after the fire when, in fact, Truman, Jr. testified only that the defendant said he would pay off Truman, Jr.'s car loan; and, finally, that a statement actually made at trial by Dane Miller, one of JMM's contractors, was made instead by Arthur Pratt, JMM's realtor. As to these statements, however, the jury had the opportunity to consider the testimony itself and was instructed by the district court that the statements of counsel in closing "[were] not evidence." None of these misstatements, considered singly or cumulatively with the other alleged errors on which Truman relies, "cause[d] the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Parkes*, 497 F.3d 220, 233 (2d Cir. 2007) (quoting *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002)).

Truman also takes issue with the prosecutor's statements to the jury that "[t]he defendant needs you to believe a lot of things in order to accept his version of the facts," as well as the prosecutor's statement that, in defense counsel's closing argument, "never once did I hear him tell you any reason why Jeff Truman, Jr. would burn down that building." J.A. 606, 627. He argues that these statements impermissibly shifted the burden of proof. We disagree. The government cannot "suggest that the defendant has any burden of proof or any obligation to adduce any evidence whatever," *United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990), but when the defense puts forward a theory of the case, the prosecution is entitled to argue that the defense failed to support its own theory with credible evidence, *United States v. Bubar*, 567 F.2d 192, 199 (2d. Cir. 1977). It was acceptable for the Government to argue that Truman had failed to support his own theory of the case – that Truman, Jr. had started the fire on his own, then blamed Truman to get a lighter sentence – by pointing out that the defense had failed to present evidence of Truman, Jr.'s motive

7

for burning the building. Moreover, even if the Government's remarks were sufficient to create any confusion in the minds of the jury, the district court clearly instructed the jury that the burden of proof "never shifts to the defendant, which means that it is always the government's burden to prove each of the elements of the crime charged beyond a reasonable doubt." Trial Tr. at 1588-89. *See United States v. Walker*, 835 F.2d, 983, 989 (2d Cir. 1987) (noting that proper jury instructions may cure the effect of potentially improper burden-shifting comments).

We have considered Truman's remaining arguments regarding the prosecutor's summation and conclude they are without merit. The challenged statements, viewed in context and with the jury instructions in mind, fail to overcome the strong presumption against reversing criminal verdicts because of a prosecutor's statements in summation. Here, the prosecution's conduct amounted, at most, to "isolated impropriet[ies] in an otherwise fair trial." *United States v. Melendez*, 57 F.3d 238, 242 (2d Cir. 1995).

## III.

Finally, Truman challenges his sentence. Truman argues, first, that the district court erred procedurally by failing adequately to explain its imposition of a within-Guidelines 217-month term of imprisonment. But the district court's explanation for its sentence was not so deficient as to constitute plain error, the applicable standard given Truman's failure to object before the district court. A sentencing court must, "at the time of sentencing, . . . state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). But we have held that "Section 3553(c) requires no specific formulas or incantations; rather, the length and detail required of a district court's explanation varies according to the circumstances." *United States v. Cassesse*, 685 F.3d 186, 192 (2d Cir. 2012). When a judge imposes a sentence within the Guidelines range, the decision "will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356

(2007). At the sentencing hearing, the district court stated that in imposing sentence it considered "all the pertinent information including, but not limited to, the Presentence Investigation Report, the addendum, the submissions by counsel, the 2012 edition of the Sentencing Guidelines manual [and] . . . the factors outlined in 18 U.S.C. § 3553(a)." J.A. 787. The court further explained its decision by pointing out that Truman's actions had endangered the lives of many innocent people, among them his own child. We conclude that no further explanation was required, and that Truman's argument to the contrary is without merit.

Truman also contends that his sentence is substantively unreasonable. We review a sentence for substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 56 (2007). A district court substantively errs "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).

Truman argues that his 217-month term of imprisonment was substantively unreasonable both because the district court failed adequately to take into account his background as a contributing member of society and because the court improperly relied on the severity of the fire. But the information about Truman's employment and family is narrated in the PSR, and Truman's lack of criminal history was taken into account in the calculation of the Guidelines range, which was specifically mentioned by the court. Truman contends that the aspects of the fire relied on by the court in its sentencing – the destruction of property, danger to Truman, Jr. and substantial response from firefighters – were not intended by Truman. The purpose of the arson, however, was to destroy the building, and any fire large enough to turn a five-acre property into a total insurance loss would pose a danger to others and demand a significant response from firefighters. The district court did

9

not abuse its discretion in relying on such factors in imposing a Guideline-range sentence of 217 months' imprisonment.

We have considered all of Defendant-Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk